Jamil **ABDUL–MUSAWWIR,**
**Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

No. 3–585A116.

Court of Appeals of Indiana,
Third District.

Sept. 30, 1985.

Paul James Newman, South Bend, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

STATON, Presiding Judge.

Jamil Abdul-Musawwir (Jamil) was charged with the crime of Theft, a Class D felony. He was released on bond, and his trial on that charge was set for September 10, 1984. Jamil failed to appear for that trial, and he was subsequently arrested and convicted by a jury of Failure to Appear, a Class D felony.[1] In his appeal of that conviction, Jamil raises three issues for us to consider. They are as follows:

(1) Whether the verdict is supported by sufficient evidence and is it contrary to the evidence and the law?

(2) Whether the trial court erred in denying Jamil's Motion for a Change of Judge?

(3) Whether the trial court erred in denying Jamil's Motion for a Continuance?

Affirmed.

## I.

### Verdict

Our standard of review for sufficiency of the evidence issues is well known. Recently it was reiterated in *Smith v. State* (1985), Ind., 474 N.E.2d 71 as follows:

"The appellate court will not weigh the evidence nor judge the credibility of the witnesses. Rather, it considers only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be af-

firmed. *Reed v. State* (1979), 180 Ind. App. 5, 387 N.E.2d 82; *Henderson v. State* (1980), 273 Ind. 334, 403 N.E.2d 1088."

*Smith,* 474 N.E.2d at 73.

The evidence most favorable to the State is that at a hearing held on August 24, 1984, Jamil's trial on the charge of Theft was set for 9:30 a.m., September 10, 1984, at South Bend, Indiana. Jamil was directly informed of his trial date and place by the court and by his counsel.

On Friday evening, September 7th, Jamil traveled to Chicago, Illinois where he remained until September 10th. When Jamil failed to appear by 11:00 a.m. on the day of his trial, a bench warrant was issued for his arrest.[2] When asked to explain why he did not appear in the South Bend courtroom at the specified time, Jamil replied as follows:

"I was in Chicago that morning, and I called my counsel Paul Newman to verify what time I was to appear in court because I had become confused with so many court dates and time settings on my mind, and I was also under the influence of intoxicants at that time. I spoke to Mr. Newman, and he told me that I was mistaken. I was not supposed to appear at 1:30. I was to be there at 9:30. So at that time I told Mr. Newman that I would have a difficulty in trying to get from Chicago, Illinois to South Bend, Indiana within that proximity of time. I further said that I would have to wait until my friends returned to get a ride back to South Bend and I would like for him to ask the judge to give me a contin-

1. IC 1979, 35–44–3–6 (Burn's Code Ed.) provides that:

"(a) A person who, having been released from lawful detention on condition that he appear at a specified time and place in connection with a charge of a crime, intentionally fails to appear at that time and place commits failure to appear, a class A misdemeanor. However, the offense is a class D felony if the charge was a felony charge.

"(b) It is no defense that the accused person was not convicted of the crime with which he was originally charged.

(c) This section does not apply to obligations to appear incident to release under suspended sentence or on probation or parole."

2. Jamil did return to South Bend at approximately 3:30 p.m. on September 10, 1984. He

uance because I had been present at all other proceedings." [3]

(R. 177–78).

The elements of the crime of failure to appear are as follows: (1) a person released from lawful detention; (2) on condition he appear at a specific time and place; (3) in connection with a charge of a crime; (4) who intentionally fails to appear at the time and place specified. *Pennington v. State* (1981), Ind., 426 N.E.2d 408, 409–10. That case is similar to the present one in that the issue in focus is the intentional element of the crime.

In *Pennington* our Supreme Court strictly construed IC 35-44-3-6 requiring that both the letter and the spirit of the statute must be violated to eliminate the spectre of criminal laws subjectively applied or unwittingly violated. Pennington's conviction for failure to appear was reversed because, at the time of his release, he was not advised by the court of his duty to appear at a specified time and place. In addition, during plea negotiations, the state stipulated in writing that the cause for which Pennington later failed to appear would be dismissed. We note the diversity between *Pennington* and the present case.

Here, Jamil was personally instructed by the court at the time of his release to appear at a specified time and place. In addition, the circumstances Jamil claims to account for his confusion do not in any way approximate those in *Pennington*. Jamil knew that he must appear on September 10th, he even called his attorney at 8:30 that morning to confirm the court appearance he was under a duty to make. Jamil's confusion, which he cites as the reason for his failure to appear, was caused by the influence of intoxicants and a mistake regarding the time of his appearance. Unlike the confusion in *Pennington,* where the state's promise to dismiss the case contributed to Pennington's failure to appear, Jamil was solely responsible for his non-attendance on the day in question.

The obvious purpose of the failure to appear statute is to thwart the intentional frustration of the administration of criminal justice. *Id.,* at 410. We believe that the evidence most favorable to the state is sufficient to sustain the jury's verdict, and Jamil's only contention is that the evidence regarding his intentional failure is insufficient. Our conclusion on this issue is aptly supported by the decision reached in *Haskett v. State* (1979), 179 Ind.App. 655, 386 N.E.2d 1012. There Haskett knew he was to appear on a certain date, called the sheriff to inform him he would not show up until the next day, but failed to appear until some time later. The *Haskett* court concluded that in the absence of extenuating circumstances or lack of adequate notice, an intent not to appear may be presumed. *Id.,* 386 N.E.2d at 1015. Armed with this presumption, and unencumbered by any extenuating circumstances, our course is dictated by our standard of review. We affirm the jury's verdict.

## II.

### Change of Judge

On September 24, 1984, a preliminary plea of not guilty to the failure to appear charge was entered for Jamil. The case was assigned to Judge Swartz at that time, and the Public Defender was appointed as Jamil's counsel. The Public Defender entered his appearance on September 26, 1984, and filed a motion for discovery. On November 10, 1984, the Public Defender was granted permission by the court to withdraw as Jamil's counsel because Jamil had retained private counsel. Jamil's trial on the failure to appear charge was set for December 7, 1984.

On December 4, 1984, private counsel withdrew. The same Public Defender who had previously represented Jamil was reappointed. The next day, Jamil's Public Defender filed a motion for continuance and a motion for a change of judge. At a hear-

---

was arrested on September 14, 1984, following a high speed chase in South Bend.

3. Jamil had another court date, in another case, set for September 27, 1984, also at 9:30 a.m.

ing on these motions, held on December 6, 1984, both motions were denied.

Jamil, citing *Wilson v. State* (1984), Ind. App., 472 N.E.2d 932, complains that his motion for a change of judge was denied without a meaningful opportunity for him to be heard. The State responds by arguing that there was no error here because Jamil's motion was untimely. We agree with the State.

Ind.Rules of Procedure, Criminal Rule 12, in pertinent part, explicitly provides:

"In any criminal action, no change of judge or change of venue from the county shall be granted except within the time herein provided.

An application for a change of judge or change of venue from the county shall be filed within ten [10] days after a plea of not guilty, or if a date less than ten [10] days from the date of said plea, the case is set for trial, the application shall be filed within five [5] days after setting the case for trial. Provided, that where a cause is remanded for a new trial by the Supreme Court, such application must be filed not later than ten [10] days after the party has knowledge that the cause is ready to be set for trial.

Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself *specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence.* Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion."

(emphasis supplied.)

Thus, Criminal Rule 12 makes it clear that we will reverse the trial court's ruling only for an abuse of discretion, and that in order to qualify for a change of judge after

the ten day period has elapsed, the rule's specific instructions must be followed.

Jamil's motion for a change of judge was raised beyond the ten day period referenced in Criminal Rule 12, and it is devoid of the necessary information mandated by the rule. Our conclusion then is that it was not an abuse of discretion to deny this motion. *Petruso v. State* (1982), Ind., 441 N.E.2d 446, 448 (failure to follow clear dictates of Criminal Rule 12 justified denial of a motion for change of venue); *Crowe v. State* (1983), Ind.App., 456 N.E.2d 439, 440–41 (change of venue from judge denied because of untimely and insufficient motion).

### III.

#### Continuance

Jamil next contends that it was an abuse of discretion for the trial court to deny his request for a continuance because the Public Defender was reappointed on December 4th and his trial was set for December 7th. He argues that forcing the Public Defender to proceed to trial deprived him of the right to effective counsel. Specifically, he claims that the denial prevented him from offering evidence to negate the intentional element of the crime for which he was convicted.

To bolster his argument, Jamil's counsel claims that he was "... unable to locate the friends of the defendant with whom he had been visiting in Chicago, Illinois, and who transported him back to South Bend, Indiana. The testimony of these witnesses in regard to the defendant's intentions to return to South Bend, Indiana for trial could have had a great impact on the jury ..." (Appellant's Brief, p. 6). In addition, in his Motion for Continuance, Jamil claimed that the continuance should be granted in order to allow time for a particular clinical psychologist to testify as to the mental condition of Jamil immediately prior to his failure to appear on September 10th.

At the hearing on the motion for a continuance, Jamil's counsel stated that the reason for calling the psychologist was to

establish an insanity defense. The court denied the motion on the grounds that it was untimely.[4] We agree.

The State's counterargument on Jamil's lack of effective counsel argument is that the evidence presented by the State at trial was largely documentary and unimpeachable and that the conduct of Jamil's counsel revealed no evidence of inadequate preparation. Jamil and the State refer us to *Kimball v. State* (1985), Ind., 474 N.E.2d 982 for guidance in resolving this issue.

In *Kimball* the issue before the Indiana Supreme Court was whether or not the appellant was deprived of the effective assistance of counsel due to counsel's being inadequately prepared for trial. In that case, one public defender took over for another on the day of trial, and the court held that a continuance of one-half day was adequate to allow for Kimball's representation. On its facts *Kimball* differs from the instant case in that Kimball's public defender told the court that he had adequate time to prepare but needed time to complete discovery.

The *Kimball* court opined that on a case by case basis, one must look at and compare the time of counsel's appointment and his conduct at trial to determine whether or not there was inadequate preparation sufficient to deprive a defendant of the right to effective counsel. In making this determination the reviewing court should consider the totality of the circumstances, which includes the complexity of the issues, the necessity for pre-trial motions, the necessity to interview witnesses, and whether the defendant is able to assist in the preparation. *Id.*, at 984.

When the abovementioned factors are applied to the present case, we can not conclude that the trial court erred by denying Jamil's motion for a continuance. When viewed in its entirety, the record does not indicate that Jamil was not adequately represented. When the public defender was appointed the first time to represent Jamil, he filed a motion for discovery. Although Jamil's private counsel later withdrew from the case, there is nothing in the record to indicate that he was precluded from interviewing possible defense witnesses or that Jamil was precluded from assisting him in the preparation of this case. The issues raised were not complex ones, and as a matter of law, we cannot say that Jamil was denied effective assistance of counsel because he was not granted a continuance.

The decision to grant or deny a continuance is within the sound discretion of the trial court, *Chambers v. Public Service Co. of Indiana, Inc.*, (1976), 265 Ind. 336, 355 N.E.2d 781, and good cause is required to be shown by the movant. Ind.Rules of Procedure, Trial Rule 53.5.[5] That rule is

---

4. IC 1985, 35–36–2–1 (Burn's Code Ed.) provides that:

"When the defendant in a criminal case intends to interpose the defense of insanity, he must file a notice of that intent with the trial court no later than:

(1) Twenty [20] days if the defendant is charged with a felony; or

(2) Ten [10] days if the defendant is charged only with one or more misdemeanors;

before the omnibus date. However, in the interest of justice and upon a showing of good cause, the court may permit the filing to be made at any time before commencement of the trial."

5. Ind.Rules of Procedure, Trial Rule 53.5 provides that:

"Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence. The court may award such costs as will reimburse the other parties for their actual expenses incurred from the delay. A motion to postpone the trial on account of the absence of evidence can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it; and where the evidence may be; and *if it is for an absent witness, the affidavit must show the name and residence of the witness, if known, and the probability of procuring the testimony within a reasonable time, and that his absence has not been procured by the act or connivance of the party, nor by others at his request, nor with his knowledge and consent, and what facts he believes to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured.* If, thereupon, the adverse party will consent that, on the trial, the facts shall be taken as true if the absent evidence is written

quite explicit in its directions for establishing good cause, and Jamil's "Motion for Continuance" did not conform to the standard promulgated by the rule. Because Jamil did not provide the necessary information about absent witnesses in his motion, the denial was not an abuse of the trial judge's discretion. *See Farm Bureau Mutual Ins. Co. v. Dercach* (1983), Ind. App., 450 N.E.2d 537, *trans. den.* (movant must demonstrate good cause and prejudice to disturb denial of continuance ruling).

Affirmed.

HOFFMAN and GARRARD, JJ., concur.

or documentary, and, in case of a witness, that he will testify to said facts as true, the trial shall not be postponed for that cause, and in such case, the party against whom such evidence is used, shall have the right to

impeach such absent witness, as in the case where the witness is present, or his deposition is used."
(emphasis supplied).