Vester ROSE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–785A200PS.

Court of Appeals of Indiana,
Fourth District.

Feb. 12, 1986.

Steven C. Litz, Nile Stanton & Associates, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant-Appellant Vestor Rose (Rose) appeals his jury conviction for delivery of a controlled substance, a class B felony, IND. CODE 35-48-4-2. We affirm.

ISSUES

Rose raises three issues for our review. Restated, the issues are

1. whether the trial court erred in denying Rose's oral motion for change of judge made on the day of trial,

2. whether the court erred in denying Rose's motion to dismiss and motion for continuance, based on a claim the prosecutor interfered with his Sixth Amendment right to effective assistance of counsel, and

3. whether a State's exhibit was properly admitted into evidence following the tes-

timony of an expert witness regarding the exhibit.

FACTS

On September 29, 1983, a State Police confidential informant went to Rose's home to make a "controlled buy" of illegal drugs. The State Police placed a transmitter on the informant which allowed them to record what had transpired in the house. The informant made the purchase and turned the contents (ten pills in a cellophane wrapper) over to Trooper Stephen Banks (Trooper Banks). Trooper Banks placed the substance in an evidence bag which he sealed, labeled and submitted to the State Police laboratory clerk on September 30. A police chemist then conducted an analysis of the pills and determined they contained lysergic acid diethylamide (LSD).

Rose was charged by information and an initial hearing was held on December 16, 1983. The following conversation transpired at the hearing:

AND THE JUDGE SAYS:

This is in the matter of the State of Indiana vs. Vester R. Rose, Number C–83-52, being an information for Dealing in a Controlled Substance. Uh, this—the initial hearing has been continued twice, uh, in order that Mr. Rose could employ an attorney, and, uh, do you have an attorney as yet?

A. Uh, I did have Mr. Greer, he'll notify —I've got a letter from him that he would notify you today that he'll not represent me.

Q. He'll not.

A. I've been to see Mr. Shaw already. I'd still like to enter a plea today of Not Guilty.

Q. Uh, huh. All right.

A. And I plan on having sufficient funds, but my mother's probably gonna go probably go down and get a loan (Inaudible).

Q. Well I think that's just great, that your mother has to go out and get a loan (Laughter).

A. I don't think it's great, sir.

Q. To defend you for drug sellin'. Oh my, if I was her I'd kill ya. So, all right, then we'll go ahead with the arraignment. You are advised that you have a right to have an attorney, and if you do not have the money or means with which to employ an attorney the Court must appoint an attorney for you at public expense, do you understand you have that right? [R. 176–177]

A. Yes sir.[1]

Attorney Peter Shaw (Shaw) entered an appearance on Rose's behalf on January 4, 1984. He filed a motion for continuance, claiming Trooper Banks was unavailable for deposition, on June 7, 1984. On June 18, 1984, the prosecutor wrote a letter to the court acknowledging Rose's case should be continued. At the bottom of the letter was a note which stated:

NOTE TO PETE SHAW ONLY:

Before the deposition of Trooper Banks, I will agree to six years, three suspended; but if you insist on the deposition, I will insist on the original plea bargain of six years, two suspended.

The court granted the motion for continuance and reset trial for October 15, 1984. Shaw thereafter filed another motion for continuance which was granted and the trial was rescheduled for November 7, 1984.

On October 31, 1984, Shaw filed a request for permission to withdraw as coun-

---

**1.** While this obvious breakdown in courtesy and court decorum does not affect our ultimate decision, we deem it appropriate to remind the trial judge Canon 3 of Indiana's *Code of Judicial Conduct* reads, in part

  A. Adjudicative Responsibilities

  .    .    .    .    .

  (2) A judge should maintain order and decorum in proceedings before him.

  (3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.

  .    .    .    .    .

sel which the court denied as untimely. The court saw Rose's request for other counsel, or to proceed *pro se*, as an attempt to manipulate a trial which had twice been continued.

On November 5, 1984, two days before trial, attorney Nile Stanton (Stanton) entered an appearance for Rose and filed a motion for continuance. The motion for continuance was denied. On the day of trial, Stanton filed a motion to dismiss, claiming (1) Rose had been denied due process, and (2) the State had interfered with Rose's Sixth Amendment right to effective assistance of counsel through the plea bargaining offer. The motion to dismiss was denied.

Before trial, Rose played a tape recording of the initial hearing to Stanton's associate, Attorney Steven Litz (Litz). Litz then made an oral motion for change of judge claiming the trial judge's statements to Rose "indicates a clear bias towards our client." No further evidence of bias was submitted. The judge denied the motion as untimely, further indicating the motion expressed no showing of cause.

At trial, the State Police chemist testified, without objection, about his analysis of the pills. His analysis showed the pills contained LSD. During the subsequent testimony of the confidential informant, the State submitted the pills and the cellophane wrapper into evidence. Rose raised a chain of custody objection to the exhibit based on an unexplained piece of scotch tape found on the cellophane wrapper. Trooper Banks testified the tape was not on the cellophane when he submitted the evidence bag to the police laboratory. The trial judge overruled the objection to the exhibit, finding the piece of tape to be "of no consequence." Rose subsequently was found guilty by the jury and now appeals.

## DISCUSSION AND DECISION

### I. *Change of Judge*

Rose claims the trial court erred in denying his oral motion for change of judge made on the day of trial. He claims because his second counsel was retained a week before trial and because his counsel became aware of the initial hearing tape only "moments before trial began" he should not have to fully comply with the requirements of Ind. Rules of Procedure, Criminal Rule 12. We disagree.

A ruling on a motion for change of judge in a criminal case is discretionary. *Gary v. State* (1984), Ind., 471 N.E.2d 695, 698. On appellate review, the burden is on the appellant to show a *clear* abuse of discretion. *White v. State* (1982), Ind., 431 N.E.2d 488, 490. (Emphasis supplied). The record must show actual bias and prejudice of the judge against the defendant before a conviction will be reversed on the ground the trial judge should have disqualified himself. *Jones v. State* (1981), Ind. App., 416 N.E.2d 880, 881.

Ind. Rules of Procedure, Criminal Rule 12 requires the showing of cause as a prerequisite for the discretionary granting of a motion for change of judge. *State ex rel. Robinson v. Grant Superior Court* (1984), Ind., 471 N.E.2d 302, 303. Following the explicit guidelines of C.R. 12, we find Rose's contention without merit. In *Abdul-Musawwir v. State* (1985), Ind.App., 483 N.E.2d 464, our Third District addressed a similar fact situation. After a "last minute" change of counsel, defendant filed a motion for continuance and motion for change of judge. Both were denied. In *Abdul-Musawwir, supra,* as here, the motion for change of judge was made after the rule's prescribed ten day period following a plea of not guilty. When such is the case, criminal rule 12 states in pertinent part:

Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing par-

ty shall have the right to file counter-affidavits on such issue within ten [10] days, and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion.

In *Abdul-Musawwir*, Judge Staton said:

Thus, Criminal Rule 12 makes it clear that we will reverse the trial court's ruling only for an abuse of discretion, and that in order to qualify for a change of judge after the ten day period has elapsed, the rule's specific instructions must be followed.

Jamil's motion for a change of judge was raised beyond the ten day period referenced in Criminal Rule 12, and it is devoid of the necessary information mandated by the rule. Our conclusion then is that it was not an abuse of discretion to deny this motion. *Petruso v. State* (1982), Ind., 441 N.E.2d 446, 448 (failure to follow clear dictates of Criminal Rule 12 justified denial of a motion for change of venue); *Crowe v. State* (1983), Ind. App., 456 N.E.2d 439, 440–41 (change of venue from judge denied because of untimely and insufficient motion).

483 N.E.2d at 467. Because Rose failed to follow the guidelines of Criminal Rule 12, failure to grant his motion for change of judge was not an abuse of discretion.

## II. *Plea Bargain Offer*

Rose next contends the trial court erred in denying his motion to dismiss and motion for a continuance. He claims the prosecutor's plea bargain offer interfered with his Sixth Amendment right to effective assistance of counsel. We disagree.

The granting of a motion for a continuance lies within the sound discretion of the trial judge, whose determination will be reversed only upon a showing of clear error. *Woods v. State* (1985), Ind., 484 N.E.2d 3, 8. A motion to dismiss is governed by the grounds provided in IND. CODE 35-34-1-4.

■ In the present case, the prosecutor wrote a note to Rose's attorney following the second continuance which clearly was a plea bargain offer. Rose's attorney was free to accept or reject the offer, which he apparently rejected because the case came to trial. We consider this a tactical move which counsel was free to make.

■ Deliberate choices made by counsel for some contemplated tactical or strategic reason do not establish ineffective assistance of counsel. *Brown v. State* (1982), Ind., 442 N.E.2d 1109, 1116. We will not speculate as to what may have been the most advantageous strategy in a particular case, and the fact another attorney might have conducted the defense differently is not sufficient to require reversal. *Id.*

■ Rose next contends the plea offer was "vindictive." He claims this vindictiveness denied him due process. He further claims the prosecutor violated Disciplinary Rule 6–101. We find both contentions meritless.

In *Powell v. State* (1984), Ind.App., 463 N.E.2d 529, Judge Garrard discussed the U.S. Supreme Court ruling in *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, stating:

The court's discussion of the plea bargain negotiation process is instructive. It recognized that in the "give-and-take" of plea bargaining there is no element of punishment or retaliation so long as the accused is free to accept or reject the state's offer. 434 U.S. at 364, 98 S.Ct. at 668. The Court then stated:

"While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' *Chaffin v. Stynchcombe*, [ (1973) ], *supra*, 412 U.S. [17] at 31, 93 S.Ct. [1977] at 1985 [36 L.Ed.2d 714]. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple realty that the

prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty."

Indiana adopted this view of the plea bargain process in *Howard v. State* (1978), 268 Ind. 589, 377 N.E.2d 628, 629–30.

We find the process here described to be within the legitimate ambit of the prosecutor's discretion in utilizing the bargaining process. Two of the goals served by plea negotiation are the savings of time and expense for the court, the prosecutor's office, the jurors and the witnesses that may be effected thereby. It follows that the prosecutor has a legitimate concern in promoting early disposition and that this element in the negotiation process diminishes in value as the preparation and the trial, itself, actually proceed. We conclude that neither the fact of a subsequent offer less advantageous to the accused, nor the process of making such offers constitutes "improper coercion" or impinges upon the accused's right to due process. *Powell,* 463 N.E.2d at 530–531. Following *Bordenkircher, supra,* and *Powell, supra,* we find the trial judge did not err in denying the continuance. Because the motion to dismiss was based on the same grounds, we find no error in its denial.

### III. *Admission of Exhibit*

Rose contends the trial court committed reversible error by admitting the purchased pills into evidence. He claims an inadequate chain of custody was established due to a piece of scotch tape being found on the cellophane wrapper which contained the pills. The tape was not present when Trooper Banks submitted the evidence to the police lab. Thus, he concludes the evidence must have been tampered with and must be excluded. We disagree.

No objection to the exhibit's admissibility was raised until after the State Police chemist had testified, without objection, regarding his analysis of the exhibit's contents. The chemist concluded, without objection, the pills contained LSD.

Error in the admission of evidence is harmless when other evidence having the same probative value is admitted without objection and is not refuted. *Maiden v. State* (1985), Ind., 477 N.E.2d 275, 277; *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, 1228. Further, we find the exhibit was only demonstrative of evidence already admitted without objection. *See, Randall v. State* (1983), Ind., 455 N.E.2d 916, 929.

Trooper Banks indicated he submitted a sealed evidence bag to the police lab evidence clerk. The chemist testified the packet was sealed when he received it. This indicates sufficient precaution against tampering up to the time the substance was tested. *See, Schlabach v. State* (1984), Ind.App., 459 N.E.2d 740, 743.

Accordingly, the trial court is affirmed in all respects.

YOUNG, P.J., concurs.

MILLER, J., concurs with opinion.

MILLER, Judge, concurring.

I concur in Judge Conover's opinion, but write separately to address more specifically the first prong of Rose's argument under Issue II.

Rose contends the prosecutor's plea bargain offer interfered with his sixth amendment right to effective assistance of counsel. He does not contend he was rendered ineffective assistance. Rose's argument is more in the nature of an allegation of prosecutorial misconduct. Therefore Judge Conover's reliance on authority that defense counsel's choices made for tactical or strategic reasons do not establish ineffective assistance of counsel does not directly address Rose's argument.

Specifically Rose argues that the prosecutor's plea bargain offer placed defense counsel Shaw in a Catch-22 position. If Shaw advised his client to accept the better offer (in which the prosecutor would recommend a six-year sentence with three years suspended), he would be advising his client to plead guilty before completing discovery

of the state's case. If Shaw completed the discovery by deposing the state's witness, Trooper Banks, he would do so at the cost of rejecting the prosecutor's better plea bargain offer (and, if Rose subsequently pleaded guilty, the prosecutor would recommend suspension of only two years of the six-year sentence). In either situation, Rose posits, the prosecutor's double-edged plea bargain offer would prevent counsel from rendering effective assistance.

Rose's argument might call for closer attention if he had actually entered a plea bargain agreement in this case. While I acknowledge the laudable goals of plea negotations—saving time and expense for all connected with a criminal prosecution—I believe there is some merit to Rose's position that a prosecutor should not be permitted, as a regular negotiating device, to condition a more advantageous plea bargain offer to the defendant on counsel's agreement to forego an investigation of the state's case to determine if the state possesses sufficient evidence to support a conviction. Such a tactic does not promote the purpose of criminal proceedings as a search for the truth.

Nevertheless, in this particular case, Rose apparently rejected the prosecutor's plea bargain offers. He is thus in no worse position than if he had completed full discovery and investigation of the state's case and decided to proceed with trial. Therefore I fail to see how Rose was prejudiced by the prosecutor's plea bargain offer. Accordingly, I concur with Judge Conover.