Raymond Robert SMITH,
Defendant-Appellant

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–1085A265.

Court of Appeals of Indiana,
Third District.

Sept. 23, 1986.

602

Doug Kvachkoff, Goodland, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Raymond R. Smith was convicted below of criminal deviate conduct, a Class B felony, IC 35–42–4–2(3); child molestation, a Class B felony, IC 35–42–4–3(a); and child molestation, a Class C felony, IC 35–42–4–3(b), for engaging in fondling, touching and deviate sexual conduct with three children under twelve years of age.

During the summer of 1984, C.A., age 8, C.B., age 6 and C.C., age 6 on several occasions visited their grandfather, the defendant. During these visits Smith showed the children pornographic movies, fondled and touched the children and caused two of the children to submit to oral sex. After learning of these events, the mother of the three children reported the incidents to the LaPorte County Welfare Department.

On November 10, 1984, Indiana State Troopers Gary Dudley and Louis Warner, accompanied Mark Bajema, a Newton County Welfare Department caseworker, on a visit to Smith's home to investigate the child molestation allegations. After advising Smith of the purpose of the investigation, Trooper Dudley gave him a card containing *Miranda* warnings and a waiver of rights section. Dudley then read aloud the contents of an identical *Miranda* card. When asked by the officers whether he understood his rights Smith indicated that he did and proceeded to sign the waiver. Subsequently during the interview Smith stated "I don't know if I should talk to you." At that time the officers readvised him of his right to remain silent. Nevertheless Smith confessed to touching, fon-

dling and engaging in oral sex with the three children on several occasions during the summer of 1984.

Smith now seeks reversal of his three convictions and a new trial based on the following alleged errors:

1. The trial judge erred in denying a motion for change of judge.
2. The trial court erred in denying the defendant's motion to suppress his confession.
3. The state failed to prove criminal deviate conduct because youth alone does not meet the "mentally disabled or deficient" element of the offense.
4. The trial court abused its discretion in deeming the three child witnesses competent to testify.
5. The trial court abused its discretion in allowing the state to use leading questions to the three child witnesses.
6. The trial court erred in denying the defendant's motion for mistrial because during the state's final argument the prosecutor commented indirectly on the defendant's failure to testify.

Additional facts necessary for the resolution of these issues will be discussed below.

We reverse in part and affirm in part.

## I.

### Change of Judge

Smith asserts that he was denied a fair trial because the trial judge, The Honorable Mark Bauer, was unduly influenced by his wife, Cynthia Bauer, a member of the New-ton County Welfare Department Child Protection Team investigating the present case. He argues that the trial judge's withdrawal in a previous unrelated child molestation case in which the child protection team was involved, coupled with the opinion testimony of R. Steven Ryan, the prosecutor in the previous and present child molestation cases, that the judge's wife could influence the judge's decision making in child molestation cases demonstrates that the trial judge was in fact unduly influenced by his wife. Furthermore, Smith urges, the trial judge violated Canon 2 of the Code of Judicial Conduct[1] by presiding over the present case despite his wife's involvement in this case. Hence he urges that the trial judge erred in denying the motion for change of judge under Indiana Rules of Procedure, Criminal Rule 12.

A ruling on a motion for change of judge is discretionary. *Gary v. State* (1984), Ind., 471 N.E.2d 695, 698. On appeal, the burden is on the appellant to show a clear abuse of discretion by the trial court in denying the motion. *White v. State* (1982), Ind., 431 N.E.2d 488, 490. The record must show actual bias and prejudice before a conviction will be reversed on the basis that the judge should have disqualified himself. *Jones v. State* (1981), Ind.App., 416 N.E.2d 880, 881. Moreover, prejudice must be shown by the conduct of the judge rather than merely inferred from his subjective views. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 456.[2] We are fully aware that a trial judge must recuse himself if his personal knowledge of the case over which he is presiding is acquired through extrajudicial sources. *Jones v.*

1. Canon 2 of the Code of Judicial Conduct provides:
 "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
 A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
 B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness."

2. Where the trial judge impermissibly participated in a child protection team meeting prior to presiding over a termination of parental rights proceeding instigated by the child protection team, a recusal of judge or change of venue was warranted. *Stivers v. Knox County Dept. of Welfare* (1985), Ind.App., 482 N.E.2d 748.

*State, supra,* 416 N.E.2d at 881. We also recognize that the Canons of Judicial Conduct prohibit conduct which compromises the availability of a fair and impartial judiciary. *Stivers v. Knox County Dept. of Welfare* (1985), Ind.App., 482 N.E.2d 748, 749. However, Smith has not shown any act or conduct in the record which demonstrates bias, prejudice or manifest partiality on the part of the trial judge. His bald assertions of undue influence are likewise unsupported by any evidence in the record. In light of Smith's failure to satisfy his burden of proof, we find that the trial court did not abuse its discretion in denying the appellant's motion for change of judge.

█ Even if we were to assume that some merit underlies the assertion of undue influence, Smith's motion was correctly denied because it was filed beyond the time specified in CR 12 and failed to allege the necessary information for such motions. CR 12 provides in pertinent part:

"An application for a change of judge or change of venue from the county shall be filed within ten [10] days after a plea of not guilty, or if a date less than ten [10] days from the date of said plea, the case is set for trial, the application shall be filed within five [5] days after setting the case for trial, Provided, that where a cause is remanded for a new trial by the Supreme Court, such application must be filed not later than ten [10] days after the party has knowledge that the cause is ready to be set for trial.

Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion."

The record indicates that a plea of not guilty was entered by Smith on November 20, 1984. His verified motion for change of judge was filed on December 19, 1984, clearly beyond the ten day period. The motion failed to state reasons why it was untimely. Criminal Rule 12 requires a showing of cause as a prerequisite for the discretionary granting of a motion for change of judge, and in order to qualify for a change of judge after the ten day period has elapsed, the rule's specific instructions must be followed. *Rose v. State* (1986), Ind.App., 488 N.E.2d 1141, 1145; *Abdul-Musawwir v. State* (1985), Ind.App., 483 N.E.2d 464, 467. Since the appellant failed to satisfy the requirements of CR 12, the trial court did not abuse its discretion in denying the motion for change of judge.

## II.

### Waiver of Miranda Rights

Next Smith challenges the voluntariness of his waiver of *Miranda* rights. The appellant asserts that the mandates of *Miranda v. Arizona* (1966), 384 U.S. 436, 467–479, 86 S.Ct. 1602, 1624–30, 16 L.Ed.2d 1149, were not satisfied because the arresting officers failed to inform the appellant of the nature of and penalties for the crime charged, and that the appellant's silence would not be used against him. Shortly before confessing to molesting the children, Smith stated "I don't know if I should talk to you," to which the officers responded by readvising Smith of his right to remain silent. This statement, Smith urges, indicates his confusion as to his rights; therefore, his waiver was not "knowingly and intelligently" executed. Consequently, according to Smith, the confession was inadmissible.

Under *Miranda v. Arizona* the arresting officers are required, prior to the initiation of questioning, to fully apprise the suspect of the state's intention to use his statements to secure a conviction, and must inform the suspect of his rights to remain

silent as well as his right to "have counsel present ... if [he] so desires." 384 U.S. at 468–70, 86 S.Ct. at 1624–26; *Moran v. Burbine* (1986), — U.S. —, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410. Beyond this duty to inform, *Miranda* requires that the police respect the accused's decision to exercise the rights outlined in the warnings. 106 S.Ct. at 1141. Although additional information beyond *Miranda* warnings might be useful to the suspect, and perhaps would affect his decision to confess, the United States Supreme Court has never read *Miranda* or the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self interest in deciding whether to speak or stand by his rights. *Moran, supra,* 106 S.Ct. at 1142. The defendant may waive his *Miranda* rights provided such waiver is made "voluntarily, knowingly and intelligently." 384 U.S. at 444, 475, 86 S.Ct. at 1612, 1628. This inquiry is two pronged. *Edwards v. Arizona* (1981), 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378.

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. *Moran v. Burbine, supra,* 106 S.Ct. at 1141. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

The standard under Indiana law for determining the admissibility of a confession is the same as that stated in *Moran,* namely, whether from the totality of the circumstances the confession was voluntary and not acquired through impermissible inducement, violence, threats or other improper influences. *Anderson v. State* (1984), Ind., 466 N.E.2d 27, 32. This same test is used to determine whether a valid waiver of *Miranda* rights has occurred. *Chambers v. State* (1979), 271 Ind. 357, 392 N.E.2d 1156. As a court of review, we review the questions of admissibility of a confession and validity of a waiver as we do other sufficiency matters. *Thacker v. State* (1985), Ind.App., 477 N.E.2d 921, 924. We do not weigh the evidence; we determine whether there was substantial evidence of probative value to support the trial court's finding. *Id.*

With regard to whether Smith was apprised of the nature of the officers' investigation, Smith has simply misread the record. It reveals that the troopers advised Smith that they were investigation allegations of child molesting. It discloses that defendant was allowed to read a card containing *Miranda* warnings while Trooper Dudley read aloud the same warnings and waiver information from an identical card. The record further shows that no threats or force were used to induce Smith to waive his rights. Lastly Smith testified at the suppression hearing that he understood his rights and that he indicated such to the officers before he signed the waiver. In light of this evidence we believe that the officers acted so as to satisfy the mandates of *Miranda.* We also are satisfied that when viewed *in toto* substantial evidence of probative value supports the trial court's determination that Smith voluntarily waived his *Miranda* rights. Thus the trial court did not err in denying Smith's motion to suppress his confession.

### III.

### Mental Infirmity and Criminal Deviate Conduct

Smith also challenges the sufficiency of the state's evidence underlying his conviction for criminal deviate conduct.[3] Specifi-

---

**3.** IC 35–42–4–2 defines criminal deviate conduct as:

"A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when:

cally, he argues that the state failed to prove that the victims of this crime were "mentally disabled or deficient" as required by the statute defining criminal deviate conduct. He correctly relies on a case squarely on point, *Douglas v. State* (1985), Ind.App., 484 N.E.2d 610, 613, in which the court held that proof of youth alone, without some showing of subnormal intelligence or mental disease, is not sufficient to satisfy the "mentally disabled or deficient" requirement of the criminal deviate conduct statute.[4]

 In a sufficiency of the evidence challenge, we look only to whether substantial evidence of probative value exists from which the trier of fact could reasonably infer guilt beyond a reasonable doubt. If such evidence exists the trial adjudication will not be disturbed. *Bowling v. State* (1986), Ind., 493 N.E.2d 783, 785. The state has the burden of proving that the victims were "mentally disabled or deficient" in order to convict Smith of criminal deviate conduct. We agree with the court in *Douglas* that an interpretation of the words "mentally disabled or deficient" to include children of normal intelligence is unwarranted. 484 N.E.2d at 613. We also find, and the state concedes, that the three child victims were of normal intelligence. Substantial evidence of probative value supporting the defendant's conviction for criminal deviate conduct is lacking in that the "mentally disabled or deficient" requirement has not been met. Therefore the defendant's conviction for criminal deviate conduct must be reversed.

While conceding its failure to satisfy the mental infirmity requirement, the state creatively argues that children, due to their lack of experience and judgment, are unable to consent to such acts and are in need of protection against such crimes as sodomy and child molestation. The protection for which the state is concerned is provided in our child molestation statute which provides in pertinent part:

"(a) A person who, with a child under twelve (12) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if it is committed by using or threatening the use of deadly force, or while armed with a deadly weapon, or if it results in serious bodily injury.

(b) A person who, with a child under twelve (12) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony. However, the offense is a Class A felony if it is committed by using or threatening the use of deadly force, or while armed with a deadly weapon."

IC 35–42–4–3.[5] Hence the protection of children against sodomy and child molestation for which the state is concerned is provided by our child molestation statute and Smith was convicted thereunder.

### IV.

#### Competence of Witnesses

Smith charges that the trial court erred in its determination that the child witness-

---

**4.** There is no contention that the children were compelled by force or were unaware the conduct was occurring.

**5.** IC 35–41–1–9 defines "deviate sexual conduct": 'Deviate sexual conduct' means an act involving:
(1) a sex organ of one person and the mouth or anus of another person; or
(2) the penetration of the sex organ or anus of a person by an object."

(1) the other person is compelled by force or imminent threat of force;
(2) the other person is unaware that the conduct is occurring; or
(3) the other person is so mentally disabled or deficient that consent to the conduct cannot be given;
commits criminal deviate conduct, a Class B felony. However, the offense is a Class A felony if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to any person other than a defendant."

es, all under ten years old, were competent to testify. He argues that the state failed to establish that the witnesses knew the difference between truthtelling and lying. Therefore, he argues the witnesses could not understand the nature of an oath and should not have been deemed competent to testify.

 The competence of a child to testify is entrusted to the discretion of the trial judge. *Lindsey v. State* (1984), Ind., 465 N.E.2d 721. When the trial judge has had an opportunity to observe the demeanor, maturity and intelligence of the child, the appellate court will only review his decision for an abuse of discretion. *Gibson v. State* (1986), Ind., 490 N.E.2d 297, 299. While our statute, IC 34-1-14-5, presumes that children under ten years of age are incompetent to testify, the test for determining a child's understanding of an oath is whether the child understands the difference between truthtelling and lying. *Johnson v. State* (1985), Ind.App., 484 N.E.2d 49, 52. At trial the three children were questioned extensively concerning the importance of truthtelling. The state asked a series of questions that our Supreme Court found sufficient to establish the competence of victims under ten years of age in *Jones v. State* (1984), Ind., 464 N.E.2d 1283, 1284. We are satisfied that the state sufficiently established the children's competency to testify at trial. Thus the trial court did not abuse its discretion.

## V.

### *Leading Questions to Young Witnesses*

Smith argues that the trial court abused its discretion in allowing the state to elicit testimony from the young witnesses with leading questions not carefully phrased and which controlled the substance of the witnesses' testimony.

 The trial court is afforded broad discretion to allow leading questions. *Beland v. State* (1985), Ind., 476 N.E.2d

843, 845. Reversible error will be found only upon a showing of abuse of discretion by the trial court. *King v. State* (1984), Ind., 460 N.E.2d 947. Leading questions on direct examination in cases involving child witnesses are permissible if carefully phrased to elicit coherent testimony. *Id.* The record reveals that the state's questions contained simple terms with which the children were familiar and which allowed the children to elaborate on the delicate events which took place. Such terms also allowed the witnesses to testify in an unrestricted, clear and coherent manner. In light of the ages of the witnesses and the sensitive nature of the subject matter of this case we believe that the state's leading questions were proper. The trial court did not abuse its discretion in allowing the questions.

## VI.

### *Comments on Defendant's Failure to Testify*

The appellant finally urges that the trial court erred in denying his motion for mistrial based on the state's misconduct during final argument. Specifically he alleges that the prosecutor indirectly commented on the defendant's failure to testify by stating:

"Who really knows exactly what happened. I wasn't there. The officers weren't there. The children were there. But we don't have the statement of, (pause), a third party."

The record does not reveal that this statement was in fact made because the parties' final arguments were not recorded. Smith admits that when the comment was allegedly made, he made no objection and made no request that the record reflect the prosecutor's comment. Nevertheless, he urges that the judge's comments in response to his later motion for mistrial are sufficient record to justify a reversal of his convictions and the granting of a new trial.[6]

---

**6.** The judge's comments to the prosecutor regarding the prosecutor's conduct are as follows:

"THE COURT: You came real close to the line and I almost stopped you, but I definitely would have sustained an objection by defense counsel

▮ The conduct of final argument as well as the course of the trial is within the sound discretion of the trial court. *Beland v. State* (1985), Ind., 476 N.E.2d 843, 846. It is well established in Indiana that neither the trial court nor the prosecutor may comment directly or indirectly upon the defendant's failure to testify. *Parsons v. State* (1985), Ind., 472 N.E.2d 915, 916, *cert. den.* 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857; *Flowers v. State* (1985), Ind., 481 N.E.2d 100, 106.[7] In determining the significance of prosecutorial misconduct, the reviewing court must decide if, from the totality of the circumstances, any misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Murray v. State* (1982), Ind., 442 N.E.2d 1012. In order for a court of appellate review to make this determination the record must reflect such misconduct or error and its prejudicial effect. *Aldridge v. Abrams & Hawkins Excavating Co.* (1985), Ind.App., 474 N.E.2d 107, 109. This court cannot consider matters outside the record. *Shigley v. Whitlock* (1974), 160 Ind.App. 78, 310 N.E.2d 93, 95. Furthermore, it is the appellant who has an affirmative duty to supply the court with a proper and adequate transcript to support his contentions. *Hestand v. State* (1986), Ind., 491 N.E.2d 976, 979; *Berry v. State* (1985), Ind., 483 N.E.2d 1369, 1373; *Harris v. State* (1985), Ind., 480 N.E.2d 932, 935. If the proceedings or arguments at issue are not recorded, the appellant can prepare and provide the court on appeal with a statement of the evidence of proceedings from the best means available, including his recollection. Appellate Rule 7.2(A)(3)(c).

An appellant's failure to provide an adequate record constitutes waiver of the issue. *Hestand v. State, supra,* 491 N.E.2d at 479.

▮ In the case at bar, the record is insufficient for this court to consider whether prosecutorial misconduct sufficient to warrant a reversal has occurred. While the transcript of Smith's motion for mistrial and the trial judge's comment therein indicate that an improper comment was made, the content of the comment itself and the context within which it was made are lacking. The apparent insufficiency of the record coupled with the appel-

---

to, about three comments, as getting close to, since counsel didn't object and just one more comment and I would have stopped you. But I'm, since we do not have a record of it because the final arguments were off record, since it was in the State's, the first portion of the State's final argument and since the defendant did not object and the defendant did not argue and properly try to clear up any misunderstanding that the jury might have that the defendant was under no burden to emphasize that. I'm going to find—
MR. KVACHKOFF: Your Honor—
THE COURT: that it was not a prejudicial comment such that would entitle you to a mistrial. I'm basing that not only upon my belief that you cannot get it reversed on appeal because of a lack of record, but also as I think you well know, Mr. Kvachkoff, this Court will not sanction any conviction as a result of improper prosecutorial action or comment. I don't think that it prejudiced him to the extent that it can't be cured by a cautionary instruction. If I thought that I'd give you a mistrial despite the fact that you don't have a record. I want you to understand that. Do you have any questions about that? In my belief in that?
MR. KVACHKOFF: No, Your Honor, we're making our objection.
THE COURT: Your objection will be noted. Would counsel please tender proposed caution-ary instruction as to that. That the burden never shifts and the defendant does not have any burden to offer any evidence whatsoever." Transcript, 543–4.

7. Indiana courts have long recognized as reversible error statements made by the prosecutor which might be construed as comments upon the defendant's failure to testify. In *Long v. State* (1877), 56 Ind. 182, 185, the prosecutor commented that he would have been pleased to hear from the other side. In *Rowley v. State* (1972), 259 Ind. 209, 285 N.E.2d 646, the prosecutor remarked that not one bit of evidence from the witness stand indicated that the defendant was not guilty. In these cases, the prosecutors' statement constituted reversible error. *Cf. Williams v. State* (1981), Ind., 426 N.E.2d 662, at 666. (Where defendant was the only person who could contradict the testimony of other witnesses, the prosecutor's comment that their story was the only story the jury had heard was subject to interpretation by the jury as a comment on the defendant's failure to testify. However, because the defendant failed to seek an admonition, which would have been effective, it was not error for the trial court to refuse to declare a mistrial.)

**610**

lant's failure to provide this court with an adequate transcript of the state's final argument pursuant to Appellate Rule 7.2(A)(3)(c) lead us to conclude that the trial court did not abuse its discretion in denying the motion for mistrial.

Additionally, the record reflects, and Smith admits, the failure to raise a timely objection to the alleged prosecutorial misconduct. Such a failure also constitutes waiver of the issue for review. *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, 1238; *Isom v. State* (1985), Ind.App., 479 N.E.2d 61, 68; *Bergmann v. State* (1985), Ind.App., 486 N.E.2d 653, 657.

We reverse the conviction for criminal deviate conduct and affirm both child molestation convictions.

STATON, P.J., and HOFFMAN, J., concur.