**Patricia STIVERS, Appellant
(Respondent below),**

v.

**KNOX COUNTY DEPARTMENT OF
PUBLIC WELFARE, Appellee
(Petitioner below),**

and

**Robert Lee Stivers, Appellee
(Respondent below).**

No. 1–185A8.

Court of Appeals of Indiana,
First District.

Sept. 10, 1985.

Joe D. Black, Ramsey & Black, Vincennes, for appellant.

Robert D. Lewis, Miller, Lewis & Miller, Vincennes, for appellee.

ROBERTSON, Judge.

The appellant-respondent Patricia Stivers appeals from a trial court judgment finding that Stivers' daughter is a child in need of services and making the daughter a ward of the appellee-petitioner Knox County Department of Public Welfare (DPW).

We reverse for the reasons stated below.

The facts show that IND.CODE 31-6-11-14 creates a community child protection team. The statute reads:

The director of the county department of public welfare shall appoint and convene a community-wide, multi-disciplinary child protection team to be known as the "community child protection team." *The team shall include* the director of the local child protection service or his representative and *the juvenile court judge* or his representative and may include a representative of the local law enforcement agency, a representative of a local school system, a physician, a nurse, attorney, social worker, person trained in mental health, a representative of a community mental health facility, a person trained in mental retardation or representative of a community-based mental retardation or other developmental disability center, or a representative of a local child abuse and neglect group, and one (1) or more lay representatives of the community. The team shall consist of no less than five (5) and no more than eleven (11) members who shall elect a team coordinator from their own membership. (Emphasis added).

The duties and functions of the community child protection team are set forth in IND. CODE 31-6-11-15:

(a) The team coordinator shall supply the community child protection team with copies of reports of child abuse or neglect under section 11 [31-6-11-11] of this chapter.

(b) The coordinator shall also supply the team with any other information or reports he considers essential to its deliberations.

(c) The child protection team may meet at least once a month or at such times as

its services are needed by the child protection service. Meetings shall be called by the team coordinator, who shall determine the agenda; however, a majority of the membership of the team may call a meeting upon giving forty-eight-hour notice to all the members. Notwithstanding IC 5-14-1.5 [5-14-1.5-1—5-14-1.5-7], meetings are open only to those persons authorized to receive information under this chapter.

(d) The child protection team shall provide diagnostic and prognostic service for the local child protection service or the juvenile court, and may recommend to the local child protection service that a petition be filed in the juvenile court on behalf of the subject child if it believes this would best serve the interests of the child.

The DPW availed itself of this procedure with the juvenile court judge participating in the community child protection team. In September and November, 1983, and May, 1984, the Stivers case was a subject of discussion at the team meeting. The juvenile court judge was in attendance at each of these meetings. A summary of the discussions as it related to the Stivers case reveals that facts which would serve as a basis for a child in need of services petition were discussed and that recommendations for instituting legal proceedings, including a petition for terminating parental rights, were considered and, ultimately, sought at the instigation of the DPW and the child protection team.

Stivers filed a motion for change of venue from the judge founded upon the judge's participation and/or presence in the meetings of the team at which her particular case was discussed. The motion was denied causing reversible error.

■ At the outset we note that cooperation between authorities and agencies dealing with problems stemming from troubled parental-child relationships is laudable. However, it cannot serve as a reason to depart from the paramount principle of a fair and impartial judiciary.

The Code of Judicial Conduct, in parts directly relevant to this appeal provides:

## CANON 1

### A Judge Should Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective without any limitation upon the Supreme Court in the exercise of its power of general superintendence, whether statutory or inherent, in areas not delineated in the Code.

## CANON 2

### A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

\*   \*   \*   \*   \*   \*

## CANNON 3

### A Judge Should Perform the Duties of His Office Impartially and Diligently

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

A. Adjudicative Responsibilities.

\*   \*   \*   \*   \*   \*

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

\*   \*   \*   \*   \*   \*

C. Disqualification.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

   (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

## CANON 5[1]

### A Judge Should Regulate His Extra-Judicial Activities to Minimize the Risk of Conflict With His Judicial Duties

B. Civic and Charitable Activities. A judge may participate in civic and charitable activities that do not reflect adversely upon his impartiality or interfere with the performance of his judicial duties. A judge may serve as an officer, director, trustee, or non-legal advisor of an educational, religious, charitable, fraternal, or civic organization not conducted for the economic or political advantage of its members, subject to the following limitations:

(1) A judge should not serve if it is likely that the organization will be engaged in proceedings that would ordinarily come

---

**1.** We recognize that the facts of this appeal probably do not fit into the letter of Canon 5, however, the spirit of the canon is directly in point.

before him or will be regularly engaged in adversary proceedings in any court.

 Although there is evidence which reflects that the juvenile court judge's participation in the meetings was passive, in that he made no recommendations or was limited in discussions, we are of the opinion that his presence at such times was not permissible if he intends to be the judge on the case under discussion.

At the worst, this situation is a classic example of an *ex parte* communication contemplated and prohibited by Canon 3(A)(4); a prospective litigant discussing potential litigation as well as the evidence, admissible or inadmissible, in support of that litigation without the presence of the other party and all done in the presence of the judge who will preside over that litigation when it is filed constitutes an intolerable situation. At the best, which is still unacceptable, the situation is one which has every appearance of impropriety and detracts strongly from a manner which promotes the integrity and the impartiality of the judiciary.

We do not ascribe a purposeful intention on the trial judge's part to violate the canons. The situation is such that he was called upon to serve two masters who are at cross purposes. The statute says the judge or his representative shall serve on the child protection team. The Canons of Judicial Conduct plainly and unequivocally prohibit that participation when it compromises the availability of a fair and impartial judiciary. The Canons must prevail.

 The DPW argues that the procedure under scrutiny is permissible and compares it to a criminal probable cause hearing. We would note that probable cause hearings are conducted under far different circumstances and that a neutral and detached magistrate is an essential ingredient. *Zimmerman v. State*, (1984) Ind. App., 469 N.E.2d 11. Neither are we persuaded by the argument concerning the procedural deficiencies of the motion for change of venue from the judge. One reason is, in our opinion, the situation is one of recusal which should have been employed instead of a routine change of judge motion. A judge's personal knowledge acquired through extrajudicial sources requires recusal. *Jones v. State*, (1981) Ind. App., 416 N.E.2d 880. Additionally, we view the situation in the light of fundamental error which overrides any procedural fault.

We remand with instructions to the effect that the trial judge should recuse himself from the cause or, in the alternative, order the granting of Stivers' motion for change of venue from the judge.

Reversed and remanded.

RATLIFF, P.J., and NEAL, J., concur.