**D.W.S., Appellant–Respondent,**

v.

**L.D.S., Appellee–Petitioner.**

No. 02A03–9412–CV–442.

Court of Appeals of Indiana.

Aug. 28, 1995.

Harry W. Foster, III, Fort Wayne, for appellant.

C. David Peebles, Fort Wayne, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-respondent D.W.S. appeals from the trial court's award of custody of his minor daughter, B.M.S., to her mother, L.D.S. The facts most favorable to the judgment are set forth below.

On the night of February 6, 1994, L.D.S. attempted to put B.M.S. to bed. B.M.S. began to cry and L.D.S. was unable to quiet her. D.W.S. was in another part of the home and heard the crying. When he investigated, L.D.S. indicated that she could not coax B.M.S. to sleep. L.D.S. informed D.W.S. that she would play a tape to soothe B.M.S. L.D.S. left the room. D.W.S. attempted to verbally correct B.M.S. but when she did not heed his command, he spanked her on her buttocks. B.M.S. continued to ignore him. Then, L.D.S. saw D.W.S. raise his hand to B.M.S. and immediately thereafter, heard a slapping noise. L.D.S. saw D.W.S. leave the room as B.M.S. wept.

The next morning, February 7, 1994, when L.D.S. woke B.M.S. she noticed a red bruise on the child's face in the shape of a hand print. Later that day, L.D.S. revealed to her therapist what she observed the night before and earlier that morning. L.D.S. was told her therapist had a duty to report the incident to the Office of Family and Children of Allen County, a division of the Allen County Department of Public Welfare (DPW). L.D.S. was advised to do the same. Later, L.D.S. took pictures of B.M.S.'s bruised face, and contacted the DPW. On February 9, 1994, L.D.S. gave her photographs of B.M.S. to a caseworker for the DPW who initiated an investigation.

Subsequently, L.D.S. filed for a divorce and petitioned the trial court for temporary custody of B.M.S. At a hearing to determine the issues of temporary custody and support, the trial court found D.W.S. used punishment severe enough to bruise B.M.S.'s face. As such, the trial court awarded L.D.S. temporary custody of the child. Further, the trial court suspended the visitation rights of D.W.S. pending further review. However, after finding L.D.S. took action to protect the well-being of B.M.S., the DPW discontinued its own investigation.

D.W.S. later petitioned for supervised visitation with B.M.S. Both parties stipulated to supervised visitation with the child and agreed to undergo psychological evaluations through CASI Center.[1] The trial court accepted the parties' stipulations and awarded D.W.S. supervised visitation through SCAN.[2] The trial court also ordered that both parties undergo psychological evaluations at CASI Center. L.D.S. and D.W.S. complied with the trial court's order.

The trial court conducted another hearing in which it awarded L.D.S. custody of B.M.S. Although D.W.S. received visitation rights, they were limited to 9:00 A.M. to 6:00 P.M. on either Saturday or Sunday on alternating weekends and to two hours one day during the week. D.W.S. appeals the trial court's order.

D.W.S. raises two issues for review:

(1) whether the trial court erred in admitting two reports prepared by the DPW; and

(2) whether the trial court abused its discretion in awarding custody of B.M.S. to L.D.S.

The trial court has broad discretion in ruling on the admissibility of evidence. *Gentry v. State* (1993), Ind.App., 625 N.E.2d 1268, 1275, *trans. denied.* On the review, this Court will only disturb the trial court's ruling upon a showing of abuse of discretion. *Id.*

D.W.S. argues the DPW's reports, admitted over objection, did not fall under any business or official record exceptions to the hearsay rule. In support of his argument, he

---

1. CASI Center provides family assessments, psychological evaluations, counseling, and recommendations for families in cases of child abuse and/or neglect and custody dispositions.

2. SCAN is an acronym for Stop Child Abuse and Neglect. It is a program designed by Child Welfare Services to offer case evaluation, counseling, visitation supervision, and recommendations to families whose children are being protected by Child Welfare Services because of abuse and/or neglect.

states that the reports do not meet the requirements for either exception because the preparers had no first-hand knowledge of the alleged abuse. Additionally, he claims the reports were not properly authenticated under Ind. Evidence Rules 803(6) or 803(8).

Ind.Evid.R. 803(6) states in pertinent part: "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.. . . ."

The requirement that the facts be observed and recorded by someone, in the regular course of business at or near the time of occurrence, who has knowledge of the incident, insures the accuracy and reliability that justifies the exception to the hearsay rule. *Williams v. Hittle* (1994), Ind.App., 629 N.E.2d 944, 947.

■ In the instant case, the preparers of the proffered reports did not see D.W.S. hit B.M.S. They prepared the reports based upon accounts of individuals who had no business duty to observe and report the facts of the alleged abuse. The DPW's reports were hearsay inasmuch as they were out-of-court statements offered to prove the truth of the matters asserted. To the extent that parts of the reports establish that an incident was reported by L.D.S. and her therapist, and contain the preparers' direct observations of B.M.S, those parts are admissible.

■ The official record exception to the hearsay rule Ind.Evid.R. 803(8) allows a statement to be admitted if a report or statement is made by:

"a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: . . . (d) factual findings resulting from special investigation of a particular complaint, case, or incident[.] . . ."

If the report is properly attested to or authenticated, it is admissible in total as an exception to the hearsay rule if, and only if, the hearsay statements within the report are also admissible under an exception to the hearsay rule. *Hinkle v. Garrett–Keyser–Butler Sch. D.* (1991), Ind.App., 567 N.E.2d 1173, 1179, *trans. denied.*

■ The DPW's reports were found to be properly authenticated by the trial court because they were signed by a supervisor and identified by a caseworker whose job it was to make such reports. L.D.S. did not establish that the preparers had first-hand knowledge of the incident reported therein, nor did she offer any evidence to prove that any other exception to the hearsay rule applied to the statements recorded. Consequently, the official record exception to the rule does not apply to the entire proffered report. The exception only applies to the extent that portions of the report indicate that an incident was reported and reveals the preparers' direct observations B.M.S.

■ Notwithstanding the conclusion that the trial court erred in entering the entire reports into evidence under either exception to the hearsay rule noted above, reversal may not be predicated upon the erroneous admission of evidence unless the admission is inconsistent with substantial justice. *Matter of A.C.B.* (1992), Ind.App., 598 N.E.2d 570, 573. The improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the judgment. *Moran v. State* (1992), Ind.App., 604 N.E.2d 1258, 1263. When certain evidence is improperly admitted in actions tried to the trial court, it is presumed that the trial court disregarded all inadmissible evidence and weighed only the proper evidence in

determining whether the plaintiff has carried her burden of proof. *Wickizer v. State* (1993), Ind., 626 N.E.2d 795, 800.

At the hearing, evidence was presented regarding the events occurring on the night of February 6, 1994. Specifically, testimony and exhibits were proffered by the respective parties. The trial court had the opportunity to observe the demeanor of the witnesses and to judge their credibility. There was sufficient evidence before the trial court to support its judgment to the degree that the erroneous admissions did not constitute reversible error.

D.W.S. also contends the trial court abused its discretion in finding that he abused B.M.S. and awarding custody to L.D.S. In support of his argument, D.W.S. points to certain trial testimony and more specifically, complains the testimony of L.D.S. contradicts his testimony.

This Court will not reverse the trial court's judgment if it cannot be said that the trial court's decision with respect to custody is clearly erroneous and contrary to the logic and effect of the evidence before the court. *Matter of Guardianship of R.B.* (1993), Ind.App., 619 N.E.2d 952, 955. This Court may not reweigh the evidence or assess the credibility of witnesses on review. *In re Children: T.C. and Parents: P.C.* (1994), Ind.App., 630 N.E.2d 1368, 1373. This Court will consider only the evidence and reasonable inferences drawn therefrom which are most favorable to the trial court's judgment. *Id.*

The trial court was solely responsible for weighing the evidence and assessing the credibility of the witnesses. D.W.S. may not base his claim of abuse of discretion merely on the trial court's failure to accept his version of the facts. Although conflicting evidence was presented, a review of the record reveals ample evidence to support the decision of the trial court. In effect, D.W.S. is asking this Court to reweigh evidence and assess the credibility of witnesses, which is beyond the parameters of this Court's review. Absent a showing that the trial court's findings are clearly erroneous and contrary

to the logic and effect of the evidence, the trial court's judgment is affirmed.

Affirmed.

SHARPNACK, C.J., and STATON, J., concur.