Sandra CARTER, Appellant–
Respondent,

v.

**KNOX COUNTY OFFICE OF FAMILY AND CHILDREN, Appellee–
Petitioner.**

No. 42A05–0104–JV–151.

Court of Appeals of Indiana.

Nov. 28, 2001.

Publication Ordered Jan. 14, 2002.

Joe D. Black, Vincennes, IN, for Appellant.

Robert D. Lewis, Vincennes, IN, for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Sandra Carter ("Mother") appeals the trial court's judgment involuntarily terminating her parental rights. Mother raises six issues, which we consolidate and restate as:

1. Whether the involuntary termination proceedings were unfair to Mother because of bias on the part of the presiding trial court judge who had previously approved a permanency plan that had recommended termination of Mother's parental rights;

2. Whether the trial court erred by permitting a health-care provider to use medical records to refresh her recollection while testifying and by admitting into evidence certain mental health records over Mother's drug and alcohol privilege objection.

We affirm.

The trial court's findings of fact are not in dispute.[1] Prior to March, 2000, the Knox County Office of Family and Children ("KCOFC") filed a petition alleging that D.C. was a Child in Need of Services ("CHINS"), and the trial court held a CHINS hearing. At the CHINS hearing, the KCOFC submitted the required per-

---

1. We direct Mother's attention to Ind. Appellate Rule 46(A)(6)(a), which provides, in pertinent part: "The facts shall be supported by page references to the Record on Appeal or Appendix in accordance with Rule 22(C)." Further, Ind. Appellate Rule 22(C) provides: *Any* factual statement shall be supported by a citation to the page where it appears in an Appendix, and if not contained in an Appendix, to the page it appears in the Transcript.... Any record material cited in an appellate brief must be reproduced in an Appendix unless it is already before the Court on Appeal. (Emphasis added).

In addition, we direct Mother's attention to Ind. Appellate Rule 46(A)(10), which provides in part: "The brief shall include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

manency plan, which proposed that "the only appropriate permanency plan for . . . [D.C.] begins with the termination of parental rights of [Mother]." Appellant's Appendix at 17; *see* Ind.Code §§ 31–34–21–5.7(b), 31–34–21–7.5. On March 24, 2000, the trial court entered an order approving the permanency plan.

Subsequent to the CHINS proceeding, Mother agreed to voluntarily terminate her parental rights if Mother's sister, Sarah, adopted D.C. The trial court approved the agreement; however, Sarah decided ultimately that she did not wish to adopt D.C. Accordingly, the trial court rescheduled the termination hearing, and the same trial court judge who had heard the CHINS case presided over the termination hearing. At the hearing, the trial court permitted, over objection, a health-care provider to use Mother's mental health records, including drug and alcohol records, to refresh her memory regarding Mother's past drug and alcohol problems. On March 29, 2001, the trial court entered judgment terminating Mother's parental rights.

■ Before addressing the two issues raised by Mother, we note that involuntary termination of parental rights is the most severe action a juvenile court can take. *In re A.N.J.*, 690 N.E.2d 716, 720 (Ind.Ct. App.1997). Termination severs all rights of a parent to his or her child. *In re D.G.*, 702 N.E.2d 777, 780 (Ind.Ct.App.1998). Therefore, termination is designated to be a last resort, available only when all other reasonable efforts have failed. *In re B.D.J.*, 728 N.E.2d 195, 199 (Ind.Ct.App. 2000). This policy is in recognition of the constitutional right of parents to the custody of their children and of the State's authority to interfere with that right only in certain limited circumstances. *In re D.G.*, 702 N.E.2d at 780. With this policy as our backdrop, we address Mother's two allegations of error.

## I.

■ The first issue is whether the involuntary termination proceedings were unfair to Mother because of bias on the part of the presiding trial court judge who had previously approved a permanency plan that had recommended termination of Mother's parental rights. Prior to the termination hearing, Mother requested a change of judge, which the trial court denied. A ruling upon a motion for a change of judge rests within the sound discretion of the trial judge and will be reversed only upon a showing of abuse of that discretion. *Reynolds v. State*, 575 N.E.2d 28, 30 (Ind. Ct.App.1991), *trans. denied.* Reversal is appropriate only where a record discloses actual bias and prejudice against a party. *Smith v. State*, 477 N.E.2d 857, 864 (Ind. 1985).

■ Initially, Mother argues that the trial court judge violated Canon 3 of the Judicial Code of Conduct[2] by presiding over the termination proceeding after previously approving a permanency plan recommending the termination of her parental rights. However, because the Indiana Supreme Court has exclusive jurisdiction over alleged violations of the Code of Judicial Conduct, we cannot determine whether a trial court judge violated a Judicial Canon. *Cook v. State*, 612 N.E.2d 1085,

---

**2.** Canon 3 provides, in pertinent part:

A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, personal characteristics or status, and shall not permit staff, court officials and others subject to the judge's direction and control to do so.

Ind. Judicial Conduct Canon 3(B)(5).

1087 (Ind.Ct.App.1993). Thus, the trial judge's action in relation to the Code of Judicial Conduct is not a proper consideration for this court. *See, e.g., id.*

■■■ Next, Mother asserts that it is "fundamentally unfair"[3] for a trial judge who previously approved a permanency plan supporting termination of Mother's parental rights to act as trier of fact in a proceeding to determine whether Mother's parental rights should be terminated. The law presumes that a judge is unbiased and unprejudiced. *James v. State,* 716 N.E.2d 935, 940 (Ind.1999). To overcome this presumption, the moving party must establish that the judge has personal prejudice for or against a party. *Lasley v. State,* 510 N.E.2d 1340, 1341 (Ind.1987). Such bias or prejudice exists only where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy before him. *Wallace v. State,* 486 N.E.2d 445, 456 (Ind.1985), *reh'g denied, cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723 (1986). Adverse rulings and findings by the trial judge do not constitute bias per se. *Lasley,* 510 N.E.2d at 1341. Instead, prejudice must be shown by the judge's trial conduct; it cannot be inferred from his subjective views. *Wallace,* 486 N.E.2d at 456.

■■■ Moreover, Indiana courts credit judges with the ability to remain objective notwithstanding their having been exposed to information which might tend to prejudice lay persons. *In re Johnson,* 612 N.E.2d 569, 572 (Ind.Ct.App.1993), *trans. denied.* Thus, the mere fact that a party has appeared before a certain judge in a

prior action or the judge has gained knowledge of the party by participating in other actions does not establish the existence of bias or prejudice. *Lasley,* 510 N.E.2d at 1341. Indeed, our courts have recognized that in the area of termination proceedings, a judge is very likely to have knowledge of previous proceedings because the juvenile court's jurisdiction over a child in need of services or his parent continues until the child reaches his twenty-first birthday, unless the court discharges the child and his parent at an earlier time. *In re D.T.,* 547 N.E.2d 278, 283 (Ind.Ct.App. 1989), *reh'g denied, trans. denied.; see also* Ind.Code § 31–30–2–1.

In the present case, Mother's sole claim of bias rests on the fact that the trial court judge presided over both the CHINS proceeding, wherein it approved a permanency plan recommending the termination of Mother's parental rights, and the termination hearing. However, as we discussed above, the mere fact that a judge has gained knowledge of the party by participating in other actions does not establish the existence of bias or prejudice. *Wallace,* 486 N.E.2d at 456. Rather, on an appeal alleging judicial bias, Mother bears the burden of proving that the trial judge was partial. In that vein, Mother contends that by approving a permanency plan recommending the termination of Mother's parental rights at the CHINS hearing, the trial judge expressed an opinion on the merits of the termination proceeding before him, namely that her parental rights should indeed be terminated.[4] We disagree.

**3.** To the extent that Mother's use of the term "fundamentally unfair" could be construed as an attempt to raise a constitutional argument regarding a parent's protected right to raise his or her child, we find the argument waived because of Mother's failure to make a cogent constitutional argument or cite appropriate

authority. *See, e.g., Davenport v. State,* 734 N.E.2d 622, 623 (Ind.Ct.App.2000), *trans. denied.*

**4.** To support her argument, Mother relies upon *Stivers v. Knox County Dep't of Pub. Welfare,* 482 N.E.2d 748, 749–751 (Ind.Ct.

In its order approving the permanency plan, the trial judge acknowledged that the plan was "in the best interest of [D.C.]" and that the KCOFC had "made reasonable efforts to preserve [D.C.'s] family." Appellant's Appendix at 21–22. Accordingly, the judge adopted the permanency plan and ordered the KCOFC to continue its services to Mother and D.C. By approving the permanency plan at the CHINS proceeding, the trial court judge was merely approving a plan of action for the KCOFC to pursue in an effort to further the best interests of D.C. The court's approval of the permanency plan did not indicate that the trial judge was prejudiced against Mother's parental abilities to the extent that he would necessarily terminate Mother's parental rights at a subsequent termination hearing.

 In fact, the Record reveals that at the termination hearing, the trial court judge took his responsibility of deciding whether to terminate Mother's parental rights very seriously. For example, the trial judge appointed a Guardian Ad Litem to represent the best interests of D.C., conducted a two day fact-finding hearing, heard and considered testimony from numerous witnesses, and took his decision whether to terminate Mother's parental rights under advisement for approximately two months. Further, when the trial court finally entered its order terminating Mother's parental rights, the judge issued findings of fact and conclusions thereon demonstrating that he had carefully balanced the interests of Mother and D.C. In the absence of any evidence to the contrary, we must presume that the trial court judge retained his impartiality and objectivity. *See, e.g., James*, 716 N.E.2d at 940. Mother bears the burden of proving otherwise, and she has failed to meet her burden. Accordingly, we hold that the trial judge was not biased or prejudiced against Mother at the termination hearing. *See, e.g., In re D.T.*, 547 N.E.2d at 283. As a consequence, the trial court did not abuse its discretion when it denied Mother's motion for change of judge. *See, e.g., In re Adoption of L.C.*, 650 N.E.2d 726, 734 (Ind.Ct.App.1995), *reh'g denied, trans. denied, cert. denied*, 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996).

## II.

The second issue is whether the trial court erred by permitting a health-care provider to use medical records to refresh her recollection while testifying and by admitting into evidence certain mental health records ("the Exhibits")[5] over

App.1985). In *Stivers*, the trial judge was exposed to information regarding the cause in question prior to it being filed in his court due to his participation on a community child protection team. *Id.* at 749. On appeal, we noted that the facts of the case implicated several canons of the Code of Judicial Conduct. *Id.* at 750. We reasoned that, at worst, the case was a classic example of an *ex parte* communication with a prospective litigant discussing potential litigation as well as admissibility of evidence in the presence of the judge but outside the presence of the other party. At best, the situation was one which had every appearance of impropriety and partiality, thus detracting from the integrity of the judiciary. *Id.* at 751. We ultimately reversed the trial court's adjudication finding appellant's daughter to be a child in need of services. *Id.*

Stivers is distinguishable from the case at bar. The trial judge in *Stivers* was a member of the child protection team that recommended and instigated the CHINS litigation. In this case, the only allegation of bias on the part of the trial judge is that he presided over both the CHINS proceeding and the termination hearing.

5. Specifically, Mother argues that Exhibits 1J, 1L, 1N, and 1P should not have been admitted into evidence. These exhibits consist of periodic review reports to the trial court and a progress report and permanency plan re-

Mother's drug and alcohol privilege objection. Both of Mother's allegations of error are based upon her argument that all of the medical records were privileged under Public Health Service, 42 C.F.R., Part 2, which provides for the confidentiality of alcohol and drug abuse patient records. We analyze Mother's allegation regarding the admission of the Exhibits first.

 Our standard of review for the admission of documents is well-settled. The admission or exclusion of documentary evidence rests within the discretion of the trial court. *City of Indianapolis v. Heeter*, 171 Ind.App. 119, 135, 355 N.E.2d 429, 438 (1976). A proper foundation for the admission of such evidence must necessarily be laid, and if the trial court, within its discretion, is satisfied as to the document's validity, such evidence may be admitted. *Id.* We will not disturb the rulings of the trial court unless an abuse of discretion is shown. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Stone v. State*, 536 N.E.2d 534, 538 (Ind.Ct.App.1989), *trans. denied.*

 In the present case, Mother does not dispute whether the KCOFC laid proper foundation for the admission of the Exhibits. Rather, Mother contends that the trial court's admission of the Exhibits violated her federal privilege pursuant to 42 U.S.C.A. § 290dd–2 and 42 C.F.R., Part 2. 42 U.S.C.A. § 290dd–2 provides, in pertinent part:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted,

regulated, or directly or indirectly assisted by any department or agency of the United States shall … be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

However, the contents of such records may be disclosed, regardless of whether the patient has given her consent:

> If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

42 U.S.C.A. § 290dd–2(b)(2)(C). In assessing good cause, it is the duty of the court to apply a balancing test which weighs the public interest and the need for disclosure against the possible injury to the patient or program. *Id.*

Before we address whether the trial court violated Mother's federal privilege, we observe that the KCOFC filed the medical documents comprised in the Exhibits with the trial court during the CHINS proceeding and prior to the filing of the termination petition. Accordingly, because the Exhibits were generated as part of the plan in dealing with the disposition of D.C. as a CHINS, we question whether or not the federal privilege applies to the medical records in the Exhibits at all. *See, e.g.,*

garding Mother's participation in court-ordered treatment.

*Summerlin v. State,* 256 Ind. 652, 658–659, 271 N.E.2d 411, 414 (Ind.1971). However, even assuming that the privilege would apply to the Exhibits, the KCOFC was entitled to offer into evidence "the CHINS petition, the predispositional report, the parental participation order, the modification report or any other document or order containing written findings, which was required to be created during the proceedings." *Tipton v. Marion County Dep't of Pub. Welfare,* 629 N.E.2d 1262, 1266 (Ind. Ct.App.1994) (wherein this court chastised the Office of Family and Children for its failure to admit the CHINS petitions, orders, and reports into evidence at the termination hearing); *see also Adams v. Marion County Office of Family & Children,* 659 N.E.2d 202, 204 (Ind.Ct.App. 1995) (finding sufficient evidence to uphold termination based solely upon the CHINS petition, CHINS order, predispositional report, and dispositional order). Consequently, the prior introduction of the Exhibits as part of the CHINS proceeding waived the privilege in the subsequent termination hearing. *See, e.g., Buntin v. Becker,* 727 N.E.2d 734, 741 (Ind.Ct.App. 2000). Therefore, the trial court did not err by admitting the Exhibits over Mother's federal privilege objection because Mother waived the privilege at the CHINS proceeding. *See, e.g., id.* (holding that the trial court did not err by ordering disclosure of documents because the attorney-client privilege was waived).

▮ Waiver notwithstanding, Mother argues that the trial court erred by admitting the Exhibits at the termination hearing because it ignored the procedural mandates for disclosure of the privileged material. The procedures for ordering disclosure of privileged medical records, for noncriminal purposes, are codified at Public Health Service, 42 C.F.R. § 2.64. First, any person having a "legally recognized interest" in the disclosure of patient records must apply for an order authorizing the disclosure. 42 C.F.R. § 2.64(a). The application must use a fictitious name to refer to the patient and may not contain any patient identifying information. *Id.* Next, the court must give the patient and the person or entity holding the records adequate notice and an opportunity to file a written response to the application. 42 C.F.R. § 2.64(b)(1)-(2). The court must further conduct a hearing in chambers or "in some manner which ensures that patient identifying information is not disclosed to anyone other than a party to the proceeding, the patient, or the person holding the record." 42 C.F.R. § 2.64(c).

From our review of the Record, it is evident that the trial court did not follow the procedural requirements of 42 C.F.R. § 2.64 with respect to the medical records at issue.[6] However, although the trial court did not follow the procedures for disclosure under Title 42, the court's need

---

**6.** The Record reveals that the trial court was unaware of the procedural mandates of 42 C.F.R. § 2.64. Instead, the trial court relied upon Mother's counsel to either provide a copy of the federal rule or information about the procedural requirements. Unfortunately, however, although Mother's counsel knew that certain procedures existed for proper disclosure of medical records, he was uncertain as to the particular procedures required. Mother's counsel did not provide the trial court with a copy of 42 C.F.R. § 2.64, nor has

he done so for us. We find it ironic that Mother's counsel asserted the federal privilege, and, at the same time, failed to acquaint himself with the particular procedural requirements of the federal law, especially when Mother's counsel served as counsel in the *Doe* case, which cited in detail the procedural requirements of 42 C.F.R. § 2.64. *Doe v. Daviess County Div. of Children and Family Serv.,* 669 N.E.2d 192, 195 (Ind.Ct.App.1996), *trans. denied.*

to serve the interests of the child with regard to the child's relationship to its parents clearly outweighed any confidentiality to which the mother may have been entitled, particularly where the whole process was part of the effort to bring her to a place where she could retain her relationship to her child. *See, e.g., Doe,* 669 N.E.2d at 195 (holding that in parental termination proceedings, the mother's right to nondisclosure of the records relating to her alcoholism and drug use, as well as the testimony of her health-care provider, must give way before the duty of the court to prevent harm and to safeguard the physical, mental, and emotional well-being of the child). Accordingly, Mother's rights were not violated under 42 U.S.C.A § 290dd–2(b)(2)(C), as Mother's protected interests in her medical records must give way to the best interests of D.C. in the termination proceeding. *See id.* We hold that any technical noncompliance with the federal regulations governing the disclosure of these records is harmless. *See, e.g., id.* at 196. Therefore, we find no error.

 Lastly, Mother argues that the trial court did not follow proper procedures when it allowed Jane Doll, a Clinical Supervisor and Case Manager with Children and Family Services, Inc., to testify from certain privileged medical records. The trial court may permit a witness to refresh his memory of facts, by referring to a written memorandum, written either by himself or by another, at or near the time of the occurrences; but the memorandum cannot be substituted in the stead of the recollection of the witness. *Richardson v. State,* 255 Ind. 655, 266 N.E.2d 51, 53 (Ind.1971) If an inspection of the writing recalls to the mind of the witness facts which he had previously known, but which had, at the moment, escaped his recollection, he can then testify to such facts as

being within his own personal knowledge. *Id.*

 The Record is unclear regarding exactly which documents Doll used to refresh her recollection during her testimony or the extent to which they were used to refresh other than as to dates on which events occurred. However, to the extent that Doll may have testified from medical documents which Mother claims were privileged under 42 U.S.C.A. § 290dd–2, we hold that Mother waived the privilege during the CHINS proceeding, or in the alternative, that the needs of the court to meet the interests of D.C. with regard to his parents clearly outweighed any confidentiality to which Mother might be entitled. Accordingly, the trial court did not err in allowing Doll to testify from the medical records. *See Doe,* 669 N.E.2d at 195.

For the foregoing reasons, we affirm the trial court's judgment terminating Mother's parental rights.

Affirmed.

NAJAM, J., and RILEY, J., CONCUR.

### *ORDER*

This Court having heretofore handed down its opinion in this appeal on November 28, 2001, which opinion was marked Memorandum Decision, Not for Publication;

Comes now the Appellee, by counsel, and files herein Motion to Publish, alleging therein that the opinion establishes and/or clarifies rules of law and that the legal and factual issues presented therein are of substantial public importance and prays the Court to order decision published;

The Court having examined said Motion, having reviewed its opinion herein and being duly advised, now finds that said Motion should be granted and this Court's

opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED that the Appellee's Motion to Publish is granted and this Court's opinion heretofore handed down in this appeal on November 28, 2001, is now ordered published;