787 N.E.2d 483 (2003)
In re the Matter of the Termination of the Parent-Child Relationship of E.T. and B.T., The Children, and Caroline Taylor, The Children's Mother, Leroy Taylor, The Children's Father, Appellants-Defendants.
No. 02A03-0209-JV-294.
Court of Appeals of Indiana.
May 7, 2003.
*484 Robert J. Bishop, Fort Wayne, IN, Attorney for Appellant Leroy Taylor, Father.
Richard Williams, Fort Wayne, IN, Attorney for Appellant Caroline Taylor, Mother.
Stephen P. Griebel, Van Gilder & Trzynka, P.C., Fort Wayne, IN, Attorney for Appellee.

*485 OPINION
ROBB, Judge.
Caroline Taylor and Leroy Taylor appeal from the trial court's involuntary termination of their parental rights to E.T. and B.T. We affirm.

Issue
The Taylors raise one issue on appeal for our review, which we restate as whether the trial court properly admitted certain documents into evidence during the termination proceedings.

Facts and Procedural History
The Taylors' two children, ages four and two, were removed from the Taylors' care in August of 1999 by the Allen County Office of Family and Children ("ACOFC") after they wandered away from home for the second time in a month. For approximately three years thereafter, the ACOFC worked with the Taylors toward reunification with their children, until a petition for involuntary termination of parental rights was filed in late 2000 or in 2001. The court's original dispositional order had ordered that the Taylors enroll in SCAN's Parents and Partners home-based services program, participate in all sessions and successfully complete the program. Visitation between the Taylors and the children was ordered to be supervised by SCAN. As part of the program, SCAN keeps reports describing all home visits and supervised visitations. During the termination proceedings, the ACOFC introduced into evidence over the Taylors' objection copies of those reports. The trial court ultimately terminated the Taylors' parental rights to E.T. and B.T. They now appeal.

Discussion and Decision
The trial court admitted the SCAN records pursuant to the business records hearsay exception found in Indiana Evidence Rule 803(6). The Taylors contend that the trial court erred in admitting those reports into evidence.

I. Standard of Review
The admission or exclusion of documentary evidence rests within the discretion of the trial court. Carter v. Knox County Office of Family and Children, 761 N.E.2d 431, 437 (Ind.Ct.App.2001). A proper foundation for the admission of such evidence must necessarily be laid, and if the trial court, within its discretion, is satisfied as to the document's validity, such evidence may be admitted. Id. We will not disturb the rulings of the trial court unless an abuse of discretion is shown. Id. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id.

II. Admission of SCAN Records
The State's exhibits 20 and 21 are reports of home visits and supervised visitations. The State offered them into evidence during the testimony of Karen Emery, supervisor of SCAN's Parents and Partners Program, as business records. Emery testified that the reports are made by SCAN staff members in the regular course of business based upon their first-hand observations of the home visits and visitations. Emery reviews and initials each report before it is sent on to the ACOFC. The home visit reports are made on a monthly basis summarizing each visit made during that month. The visitation reports are made after each supervised visitation is completed. The Taylors objected to admission of the records, claiming that the records were hearsay and did not fit within the business records exception because they are more akin to police investigative reports. The trial court admitted the records over the objection.
*486 Hearsay is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(b). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Evid. Rule 802. The business records exception to the hearsay rule permits admission of records of regularly conducted business activity provided that certain requirements are met. The exception provides:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
Evid. Rule 803(6).
We disagree with the Taylors that the specific reports admitted herein were more akin to police reports than typical business records. Although we agree that these are not business records in the sense of budget or expense reports or payroll records, they are nonetheless records of SCAN's regular business activities and as such are not comparable to inadmissible police records. The hearsay rule is designed to forbid unreliable out of court statements offered to prove the truth of the matter asserted. Stahl v. State, 686 N.E.2d 89, 92 (Ind.1997). The business records exception permits records of business activity to be admitted in circumstances when the recorded information will be trustworthy. Id. "The reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly." Id. Investigative police reports are specifically excluded from the business records hearsay exception because eyewitness statements taken by a police officer are not given in the usual course of the witness' business. Evid. R. 803(8); Payne v. State, 658 N.E.2d 635, 646 n. 20 (Ind.Ct.App.1995), trans. denied. None of the safeguards mentioned above are present in a report which accepts information from a source that is not also acting in the course of a regular activity.
In this case, however, although the actual makers of the records were not in court to testify, the records contain their own firsthand impressions of events which they had a duty to observe and upon which they had a duty to report. The reports were made contemporaneously with or soon after the events reported therein. And they are kept in the course of SCAN's regular business. Although we are troubled by the fact that the Taylors' children were taken away from them permanently and irrevocably based in part upon evidence found in pieces of paper rather than by the live testimony of the persons who actually observed the Taylors interact with their children, the records meet the requirements of Rule 803(6) for admission as business records, and we cannot say that the trial court abused its discretion in admitting *487 them.[1] We do wish to emphasize, however, our preference in such cases that the caseworkers be called as witnesses rather than relying upon their written reports.
We would also note that even if the reports were erroneously admitted, there was sufficient testamentary evidence aside from the reports themselves to sustain the trial court's termination order such that any error in the records' admission would be rendered harmless.[2]

III. Confrontation of Witnesses
The Taylors also contend that the admission of SCAN's reports violates their federal and state constitutional rights to confront the witnesses against them.
Although certain statements may constitute hearsay, they do not offend the right of confrontation where they possess substantial indicia of reliability, which may be inferred where the evidence falls within a firmly rooted exception to the hearsay rule. Hernandez v. State, 716 N.E.2d 601, 602 (Ind.Ct.App.1999). Moreover, if the statement falls within such an exception, an inference arises that the rights to confrontation and cross-examination are not violated. Id. Such exceptions to the hearsay rule exist because the manner in which certain out-of-court statements are made virtually guarantee their reliability. Id. at 603. Because we have determined that the reports fall within the "firmly rooted" business records exception to the hearsay rule, we hold that there was no constitutional deprivation here.

Conclusion
SCAN's reports of home visits and supervised visitations between the Taylors and their children are business records excepted from the general hearsay rule. Accordingly, the trial court did not abuse its discretion in admitting them into evidence. The judgment of the trial court terminating the Taylors' parental rights is affirmed.
Affirmed.
BARNES, J., concurs.
BAILEY, J., concurs in result with separate opinion.
BAILEY, Judge, concurring in result.
I concur in the result reached by the Majority but disagree with its decision to use Indiana Evidence Rule 803(6) as a vehicle for admission of the SCAN reports. Generally, the admission of documentary evidence rests within the discretion of the trial court. See op. at 485. The ultimate question on this issue, however, is the interpretation of the language of a rule of evidence, which presents a question of law. Stahl v. State, 686 N.E.2d 89, 91 (Ind. 1997).
*488 I begin by emphasizing that "[t]he right to cross-examine witnesses under oath is a fundamental right." Lowry v. Lanning, 712 N.E.2d 1000, 1001 (Ind.Ct.App.1999). That right is especially important where, as here, a fundamental liberty interest is at stake. See Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures."). Yet, the result reached by the Majority permits the permanent severance of parental bonds based, in part, on unsworn reports prepared by individuals whose training, experience, and motives were untested.
The Taylors argue that Exhibits 20 and 21 are similar to police investigative reports, not business records. Under Evidence Rule 803(8), the following are not excluded by the hearsay rule:
Public Records and Reports. Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (b) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (c) factual findings offered by the government in criminal cases; and (d) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.
(Emphasis supplied). Investigative reports prepared for public agencies are admissible under the Rule only if the agency is not a party or if a presumably adverse party offers the report.
The Rule does not define "investigative report," but in this case SCAN personnel performed a systematic evaluation of the Taylors' parenting skills. The children were adjudicated Children In Need of Services (CHINS) on January 18, 2000; it appears that the petitions for termination of parental rights were filed in late 2000 or in 2001. Exhibit 20 includes reports dated August 8, 2000 (for July) through February 11, 2002 (for January). It contains observations as well as conclusions.[3] Exhibit 21 is composed of "Supervised Visit Logs" dated March 7, 2001 through March 28, 2002. Each "log" has a section termed "Observations" and another identified as "Impressions."
In my view, Exhibits 20 and 21 are investigative reports under Rule 803(8). They contain factual findings, address a materially contested issue, and were prepared after the CHINS adjudication, largely for advocacy purposes. See Shepherd v. State, 690 N.E.2d 318, 326 (Ind.Ct. App.1997) (discussing test for exclusion under the Rule). Additionally, the reports were prepared for and offered into evidence by the ACOFC in a case where it is *489 a party. As such, the reports do not fall within the public records exception to the hearsay rule. Implicit in that conclusion is "an indication that such reports are not considered inherently reliable." Baxter v. State, 774 N.E.2d 1037, 1043 (Ind.Ct.App. 2002), trans. denied.
Additionally, I do not believe the business records exception can be used to circumvent that implication. Our Supreme Court has acknowledged:
The business records exception permits records of business activity to be admitted in circumstances when the recorded information will be trustworthy. The reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly.
Stahl, 686 N.E.2d at 92. Exhibits 20 and 21 are not the types of administrative or operational reports contemplated in Stahl. Rather, the challenged reports are the substantive end products of SCAN's business.
The need for investigation of child-related issues has spawned a cottage industry, dedicated largely to the preparation of documents used in child-related litigation. Indeed, Karen Emery testified that all SCAN clientele are referred by the ACOFC. Where a whole industry arises out of the need for documentation in anticipation of litigation, its reports cannot be disguised as business records under Rule 803(6). See 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE, INDIANA EVIDENCE § 803.106C, at 643 (2nd ed. 1995) (stating that documents made in anticipation of litigation are generally inadmissible under Rule 803(6)).
In discussing police reports in the context of Rule 803(6), we recognized that "our paramount hearsay concern is allowing a trier of fact to consider statements made or conclusions drawn in the report itself. Often, such reports contain the preparer's assumptions, interpretations, or conclusions with regard to certain events." Payne v. State, 658 N.E.2d 635, 646 n. 20 (Ind.Ct.App.1995). Cf. D.W.S. v. L.D.S., 654 N.E.2d 1170, 1173 (Ind.Ct.App.1995) (holding that reports prepared by the Department of Public Welfare were admissible in a child custody hearing to the extent the reports contained the preparers' direct observations and established that an incident of alleged abuse was reported). The exhibits in question include subjective evaluations. Yet, they were admitted into evidence without an assessment of the preparers' qualifications and without cross-examination regarding their assumptions, interpretations, and conclusions. In my opinion, the unsworn out-of-court statements should have been excluded.
Although I take issue with the conclusion that Exhibits 20 and 21 are admissible under Rule 803(6), I nevertheless find no reversible error. As the Majority observes, even if the reports were erroneously admitted, there was sufficient testamentary evidence to support the trial court's decision. Op. at 487. Consequently, I concur in result.
NOTES
[1] We do not disagree with the concurring in result opinion analyzing the records as a public record pursuant to Evidence Rule 803(8). However, although we may affirm a trial court's ruling on any ground supported by the record, the same is not true for reversal. Here, the records were offered and admitted as business records, and we are constrained to analyze the records pursuant to that section. In any event, regardless of the provision under which the records are analyzed, the result is the same: the trial court properly terminated the Taylors' parental rights based upon the weight of the other evidence presented.
[2] Karen Emery was called as a witness at the termination hearing and she had personally witnessed some of the Taylors' supervised visits with their children which were also summarized in the admitted reports. In addition, Jennifer Hayes testified at the hearing and she had been present during some of the home visits which were also summarized in the reports.
[3] For example, the "6/7/01 for 5/01" entry includes the following statement: "The clients did not seem to understand that [E.T.] could not ride the bike without [training wheels]." An entry dated "12/11/01 (for 11-01)" provides: "Clients continue to show little progress with consistency, applying techniques and tips from the FSC and obtaining the information needed to parent."