865 N.E.2d 1068 (2007)
In re the Matter of C.B., A Child in Need of Services
Amanda Bateman, Appellant,
v.
Adams County Department of Child Services, Appellee.
No. 01A02-0701-JV-9.
Court of Appeals of Indiana.
May 11, 2007.
*1070 Ruth Johnson, Indianapolis, IN, Attorney for Appellant.
Jeremy W. Brown, Burry, Herman, Miller & Brown, P.C., Decatur, IN, Attorney for Appellee.

OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Appellant-Respondent, Amanda Bateman (Mother), appeals the trial court's determination that her son, C.B., is a Child in Need of Services (CHINS).
We affirm.

ISSUES
Mother raises two issues on appeal, which we restate as:
(1) Whether the trial court, in error, permitted hearsay evidence within the dispositional report; and
(2) Whether the evidence was sufficient to support the trial court's adjudication of C.B. as a CHINS.
FACTS AND PROCEDURAL HISTORY
On July 6, 2006, the Adams County Department of Child Services (ACDCS) removed C.B., born February 6, 2004, from Mother's care. The next day, the trial court held a detention hearing and appointed a Guardian Ad Litem (GAL) for C.B. On July 14, 2006, the ACDCS filed its Petition alleging that C.B. was in need of services. In pertinent part, the Petition alleged:
On July 6, 2006, the undersigned case manager for the [ACDCS] was asked to contact the Adams Memorial Hospital emergency room regarding [C.B.]. [C.B.] had been admitted into the emergency room and was suffering from facial bruises, a broken arm, and numerous other bruises on his body. [Mother], as well as her boyfriend, Nathan Rambo, told the undersigned that [C.B.] fell off the loveseat and hit a rocking chair.
On July 7, 2006, the undersigned obtained a copy of a report from Dr. William J. Lewis [(Dr. Lewis)] who examined [C.B.] According to Dr. Lewis' report, many of the injuries sustained by [C.B.] were "not compatible with usual bruises that we would see in a 2-year-old." Dr. Lewis further noted that some of the bruises were "extremely severe" and "appear to have been caused by a hit, or more likely, several hits on the right side of the child's face."
[] Based on the foregoing information, the Petitioner believes that [C.B.], who is not yet eighteen (18) years of age, is a [CHINS] pursuant to [Ind.Code § 31-34-1], in that:
(a) [C.B.'s] physical or mental health is seriously endangered due to injury *1071 by the act or omission of [his] parent, guardian[,] or custodian.
(b) [C.B.] needs care[,] treatment[,] or rehabilitation that [he] is not receiving and is unlikely to be provided or accepted without the coercive intervention of the [c]ourt.
(Appellant's App. pp. 69-70).
Also on July 14, the trial court held an initial hearing on the Petition. On September 20, 2006, the trial court held a fact finding hearing and concluded that C.B. was a CHINS. On November 8, 2006, the ACDCS case manager filed a dispositional report recommending that C.B. remain in foster care.[1] On November 22, 2006, the trial court held a hearing on the dispositional report and entered this Order, in pertinent part:
ORDER ON DISPOSITIONAL HEARING
* * *
[Mother] filed an objection to the November 8, 2006 [dispositional] report and moved to strike certain information from the report. [Mother's] objections to the report were based on the lack of information required by [I.C. § 31-34-18]. [Mother] objected to the following language in the report:
REPORTS REGARDING FAMILY
[Mother] gave birth to a second child on October 14, 2006. [Mother] tested positive for controlled substances during delivery. Huntington County DCS staff stated verbally that the newborn child tested positive for controlled substances. This newborn child was detained by Huntington County DCS.
The [c]ourt overruled the objection and determined the information was properly contained in the report filed by the [ACDCS]. [Mother] also objected to the information attached to the report which disclosed the results of [her] urine screen dated October 16, 2006. Counsel for [ACDCS] stipulated that the results were not admissible as presented. Therefore, the [c]ourt struck the urine screen results from the report.
[Mother] agreed to the recommendations contained in the report. . . . [Mother] also agreed to the proposed parent participation plan. Therefore, the [c]ourt adopts the recommendations and does not rule on the objections raised by [Mother] regarding the form of and the information contained in the [dispositional] report. The [c]ourt did note the need to comply with the requirements of [I.C. § 31-34-18].
(Appellant's App. pp. 143-44). The trial court then proceeded to order Mother to participate and complete various programs and services.
Mother now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. Hearsay

We first address Mother's argument that the dispositional report contains inadmissible hearsay statements. Specifically, Mother contends that the statements pertaining to the birth of her second child constituted inadmissible hearsay and violated privacy laws contained within the Health Insurance Portability and Accountability Act (HIPAA) of 1996.
*1072 We first note that the trial court's decision to admit the dispositional report into evidence is a determination left to its discretion. See In re A.H., 832 N.E.2d 563, 567 (Ind.Ct.App. 2005). We will not reverse that decision except for an abuse of that discretion. Id. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. Id.
I.C. § 31-37-18-2 provides, "[a]ny predispositional report may be admitted into evidence to the extent that the report contains evidence of probative value even if the report would otherwise be excluded." Thus, in the case before us, the trial court was permitted to admit the dispositional report despite its inclusion of any hearsay, as long as the report contained evidence of probative value. In our review of the report, we find that the information regarding the birth of Mother's second child is of probative value in relation to assessing her ability to parent C.B. Specifically, the report indicates that Mother tested positive for drugs at the time of the second child's birth, which was three months after the ACDCS removed C.B. from her care. Furthermore, the ACDCS prepared the report shortly after the second child's birth; thus, we consider the evidence relevant in determining whether or not C.B. should be reunited with Mother.
Additionally, in the present case, Mother asserts that the information about the birth of her second child contained in the dispositional report constitutes a HIPAA violation. Specifically, Mother claims the ACDCS improperly attached a copy of the results of a urine drug screen test to the dispositional report. HIPAA protects individuals from unwarranted dissemination of medical and mental health records by restricting access to such records without the individual's direct consent. A.H., 832 N.E.2d at 567. The provisions of HIPAA preempt State laws. Id. However, exceptions do exist, which include the reporting of child abuse. Id.
Again, we note I.C. § 31-37-18-2, which permits the admission of a predispositional report that contains evidence of probative value even if the report would otherwise be inadmissible. More importantly, however, we highlight our previous decisions where we have held that a child's best interests outweigh a parent's right to confidentiality. See id. at 568-69 (discussing Doe v. Daviess County Div. of Children and Family Serv., 669 N.E.2d 192 (Ind.Ct. App. 1996), trans. denied) (In Doe, we concluded that a mother's right to nondisclosure of records pertaining to her treatment for alcoholism had to be weighed against the court's duty to prevent harm and to safeguard the physical, mental, and emotional well-being of child); see also Carter v. Knox County Office of Family and Children, 761 N.E.2d 431 (Ind.Ct.App. 2001), (where we reasoned that even though the trial court did not follow the procedures for disclosure of medical records under federal law, the court's need to serve the interests of the child with regard to the child's relationship to its parents overrides any confidentiality to which a parent may have been entitled). In A.H., a father objected to the trial court's admission of a psychiatric report during a termination hearing. On appeal, we followed the rationale laid out in Doe and Carter, and affirmed the trial court's admission of the report. Id. at 567.
In the present case, a result report of Mother's urine drug screen test was attached to the ACDCS's dispositional report, indicating that while hospitalized for the birth of her second child, she tested positive for several different chemicals, including benzodiazepam, opiate, cocaine, and cannabinoid. For the same reasons expressed in Doe, Carter, and A.H., we find that the trial court properly admitted *1073 the results of the urine drug screen test, along with the dispositional report. We reiterate that this exception to the HIPAA privacy laws is necessary in order to safeguard children's physical, mental, and emotional well-being. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the dispositional report in full.

II. Sufficiency of the Evidence

Mother also contends that the evidence was insufficient to support the trial court's determination that C.B. is in need of services. The ACDCS had the burden of proving by a preponderance of the evidence that C.B. was a CHINS. In re T.H., 856 N.E.2d 1247, 1250 (Ind.Ct. App. 2006). I.C. § 31-34-1-1 provides:
A child is a child in need of services if before the child becomes eighteen (18) years of age:
(1) the child's physical or mental condition is seriously impaired or seriously endangered as result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
(2) the child needs care, treatment, or rehabilitation that:
(A) the child is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
When a trial court enters findings of fact and conclusions thereon, albeit very general findings in this case, we first determine whether the evidence supports the findings, and second, whether the findings support the judgment. Id. We will reverse a judgment only if it is clearly erroneous, or in other words unsupported by the findings of fact and conclusions thereon. Id.
Our review of the record in the instant case reveals that on July 6, 2006, Dr. William Lewis (Dr. Lewis) examined C.B. and found multiple physical injuries, including a broken arm, a bruised eye and face, as well as bruises and swelling on his chest, neck, back of his head, groin, and buttocks. In testimony at the fact-finding hearing, Dr. Lewis explained that the bruise found on the back of C.B.'s head was "definitely abnormal" and signified that C.B. "was hit with some kind of object in the back of the head." (Transcript p. 64). Dr. Lewis also testified that it would be unusual for a two-year-old, like C.B., to suffer bruising in the middle of his chest or in his groin area. (Tr. p. 65). Furthermore, Dr. Lewis stated that C.B.'s buttock bruises indicated "[r]ather vigorous spanking." (Tr. p. 66). Finally, the record shows that as a result of these multiple injuries, Dr. Lewis opined that "either [C.B.] fell 100 times in [] a very short period of time from great heights or he was beaten," ultimately concluding that he was beaten, "probably on several occasions." (Tr. p. 67).
While it is not certain whether Mother inflicted these injuries upon C.B., there is no question that C.B. suffered this harm while under Mother's care and custody. See I.C. § 31-34-12-4. Moreover, given the multiplicity of C.B.'s injuries, the record suggests that Mother was slow to seek medical treatment for him. Therefore, we find that the ACDCS not only presented sufficient evidence, but overwhelming evidence that C.B.'s physical well-being is seriously endangered and that he needs care and treatment he is not receiving from Mother. See I.C. § 31-34-1-1. Consequently, we conclude that the trial court appropriately adjudicated C.B. as a CHINS.

CONCLUSION
Based on the foregoing, we conclude the trial court properly admitted the ACDCS's *1074 predispositional report and properly determined that C.B. is a CHINS.
Affirmed.
NAJAM, J., and BARNES, J., concur.
NOTES
[1] Under I.C. § 31-34-18-1, upon finding that a child is CHINS, a juvenile court is required to order a probation officer or a caseworker to prepare what is typically referred to as a pre-dispositional report. We find the dispositional report in the present case to be akin to the predispositional report described in this statute.